Virginia K. WONNEMAN (Plaintiff), Respondent,

v.

Forrest A. WONNEMAN (Defendant), Appellant.

No. 29715.

St. Louis Court of Appeals.

Missouri.

Sept. 3, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 30, 1957.

See also 305 S.W.2d 82.

73

J. W. Buffington, Mexico, for appellant.

Boyle G. Clark, Robert C. Smith, Jr., Columbia, Latney Barnes, Mexico, Clark & Becker, Columbia, of counsel for respondent.

ANDERSON, Judge.

This is an appeal by defendant, Forrest A. Wonneman, from an order of the circuit court sustaining a motion filed by plaintiff, Virginia K. Wonneman, to modify a decree of divorce by increasing the allowance for the support of the three children of the parties, and overruling defendant's motion for an order giving him general custody of said children. By said order the allowance for support was increased from $120 per month to $200 per month for the nine months of each year during which plaintiff was given general custody of said children. The court also allowed plaintiff the sum of $500 as and for an attorney's fee for the prosecution of this action.

Plaintiff obtained a decree of divorce from the defendant in the Circuit Court of Audrain County on May 4, 1949. By said decree plaintiff was awarded $20,000 as alimony in gross. The court found that the parties were the parents of Mary Christine

Wonneman, age 7 years; Carl Clement Wonneman, age 5 years; and Forrest A. Wonneman, Jr., age 4 years. At the time, the court made no provision in the decree with respect to the permanent custody of the children, but ordered that they remain temporarily in the custody of the defendant until further order of the court, and by said decree retained jurisdiction of the cause to determine said custody and the amount of support and maintenance to be paid plaintiff in the event the plaintiff should be awarded custody of said children.

On June 27, 1949, plaintiff filed a motion seeking custody of said children and an allowance for their support. On August 26, 1949, the court, after a hearing on said motion, found the issues in favor of plaintiff and awarded her general custody of the three children. By said decree defendant was given custody on the third Friday of each month from 4:00 p.m. until the following Sunday at 4:00 p.m., and during the months of June, July and August of each year, with the custody in the mother during said three months' period from 4:00 p.m. on the third Friday until 4:00 p.m. the Sunday following. The order further provided that custody of the children at Christmas was to alternate each year between the parties.

The court further adjudged that the defendant pay to plaintiff the sum of $40 per month for each of said children for their support and maintenance during the nine months' period each year from September 1st to June 1st, payable monthly on the 15th day of each month, and that defendant should not be required to pay said allowance during the months of June, July and August of each year.

On January 13, 1956, plaintiff filed her motion praying for a modification of said judgment so as to increase the allowance for support and maintenance from $40 per month for each child to $100 per month for each child. It was alleged: "that at the time of said judgment the three children were, respectively, seven, five and four

years of age; that said children are now, respectively, thirteen, eleven, and ten years of age; that by reason of their advancement in age said children require more in the way of clothing, food, entertainment, spending money, incidentals, and general support and maintenance; that living costs have greatly increased since said allowance and judgment of August 17, 1949 (sic); that the earnings of this plaintiff have not increased commensurate with the increased costs of maintaining herself and said three minor children; that further, one of the children, the said Forrest A. Wonneman, Jr., has, since the time of said judgment, contracted and now suffers from a serious and disabling disease, to wit, Parthes disease of the hip, which said disease will necessitate hospitalization for said child and extensive and costly medical care for a number of years; * * *."

The prayer of the motion was for an increase in the allowance from $40 per month for each child to $100 per month for each child, and for such further orders as from the nature of the case and the circumstances of the parties may be reasonable.

Defendant filed a countermotion in which he denied the allegations set forth in plaintiff's motion and alleged that:

"although the said children may require more in the way of clothing, food, entertainment, spending money, incidentals, and general support and maintenance due to the advancement of their ages, the amount of support and maintenance payments now being paid by defendant to plaintiff is sufficient due to the fact that the award of Forty Dollars ($40.00) per month per child was excessive when awarded at the time the ages of the children were seven (7), five (5), and four (4) years of age, nor has there been a change of condition; and defendant further denies that any increase in the amount of One Hundred Twenty Dollars ($120.00) a month now being

paid plaintiff for and during a nine (9) months period in each year is necessary.

"Defendant further denies that Forrest A. Wonneman, Jr., mentioned in plaintiff's said motion, will require extensive and costly medical care for a number of years or during any period of minority of said child.

"Defendant stated that his income is insufficient to pay more for the support and maintenance of said children than he is now paying, to wit, One Hundred Twenty Dollars ($120.00) per month.

"Defendant further states that he is now married and has and maintains a home in the outskirts of Mexico, Missouri, and is ready, willing and able to take custody and control of said children and maintain them at a standard of living that said children and defendant have been accustomed to and will continue to maintain said standard."

The prayer of the motion was that the decree be modified to give him custody during the school period of nine months, and to accord plaintiff the custody during the school vacation period, at the expense of defendant during said period, and for general relief.

The defendant was called to the stand by plaintiff. He testified that he was 55 years of age; that he was a stockman and farmer. He lives on a farm which is about two miles north of Mexico, Missouri. The farm contains 175 acres. It is mostly rough land. There is not much tillable land on it. It is stocked with cattle and sheep. A moderate home is on the farm. There is also a swimming pool.

Defendant testified that his daughter Mary Christine was fourteen years old. She attends Junior High School in Columbia. His son Carl Clement is thirteen years old and also attends Junior High

School in Columbia. The youngest child, Forrest, Jr., eleven years old, attends the West Boulevard Elementary School in Columbia. He stated he has contributed $120 a month for their support. He also stated that on one occasion when he was in Columbia their mother said she had to buy them some overalls and shirts, and that he "shelled out the money for it." He also stated: "I told Mary Christine that any time she needed any money and needed anything for her to come to her Daddy and tell me, or call me up and I would pay the expense * * * if there was anything she needed or wanted and it was in reason, I would get it for her. * * I said, 'Now, Mary Christine, you know how to write a check, I don't want you to write a check for more than $5.00 at a time * * * any time that you need money, you can write a check on me. Just sign my name by you and get the things that you need to get if you need them.' * * I asked her yesterday, 'Did you write any checks on me, did you ever need anything?' She said, 'No, I didn't Daddy, * * * but there is always things anybody would want but I didn't need them and the boys didn't need them and there was no need to do it.' "

Defendant testified that his property consisted of his farm worth $17,500; four houses in Mexico worth $17,400; Angus cattle worth $3,000; a Ford Sedan worth $2,000; and sheep worth $1,000. He also had four life insurance policies with a cash surrender value of $27,090. He stated that he had outstanding notes and bills amounting to $9,000. His net worth was $58,990. The insurance policies are made payable to the children.

Defendant denied that the youngest child, who is afflicted with Parthes disease, was in need of hospitalization. He stated that Dr. McElroy, who had been consulted, said that it was a self-curing disease, and that Dr. Hampton, a physician in St. Louis, told him that it might be that when the child was brought down for the next examination that month he could walk with-

out his crutches. He said Dr. McElroy told him a week or ten days before the trial that the boy was doing very well. Dr. McElroy told him that Mrs. Wonneman asked that the boy be taken to the Shriners' Hospital in St. Louis, but that Dr. Jolly, who was one of the trustees of the hospital, stated that he could not permit his entry into the hospital because he knew defendant would take care of him.

Defendant, at the time of the hearing, was married to his fourth wife. This marriage took place on March 24, 1956. His present wife has a fifteen year old son who lives at defendant's home. The boy works at a grocery store in Mexico. Defendant's present wife works as a checker or cashier in the same store.

Defendant further testified that he had talked to the plaintiff on numerous occasions about how the children were getting along, and whether the amount allowed was adequate. The last time he discussed the matter with plaintiff was in June the year previous, just prior to obtaining a divorce from his third wife. He stated that plaintiff told him that the children could get along on $40 a month. He further testified that he discussed with plaintiff what increase, if any, would be necessary when the children went to college and that plaintiff said: "I won't need any increase until they do get into college, but when they do get into college I expect it will take $60 a month to take care of them."

Plaintiff testified that she and the children reside in Columbia. The house they live in has three bedrooms, living room, dining room, kitchen, and bath. Plaintiff's mother lives with the family. Plaintiff owns the house. It was purchased in 1949, and cost $8500. Plaintiff purchased the house outright, but at the present time there is a loan on it of $6,000. There were three loans made. The first loan amounted to $2,500 and was taken out three or four years prior to the trial. Subsequently it was increased to $5,000, and

a few months prior to the trial increased to $6,000. Most of the $6,000 borrowed has been used for living expenses of the family. After the purchase of the house certain repairs were necessary, including a new roof which cost close to $200. She also was compelled to spend just under $500 for curbing, made necessary when the city put through a new street adjacent to her property. She also bought furniture for the house which cost a little less than $5,000. Plaintiff owns no other property. At the time of trial she owed the Exchange National Bank in Columbia $150 on a note, and had borrowed on her insurance.

Plaintiff is employed by the Conley-Meyers Company. This firm is located in Columbia and is engaged in the insurance business, also accounting and property management. When first employed, plaintiff's salary was $125 a month. Since the first part of 1955 her salary has been $250 per month.

Plaintiff prepared schedules of the necessary expenses in the support and maintenance of each of the children. These were introduced in evidence as plaintiff's exhibits 1, 2 and 3. These schedules were based on actual expenses during the last two years. Plaintiff stated that she examined her checks and receipts during that period, made a list of what was spent, and reduced the amount to a monthly basis. From these schedules it appears that it cost $90.40 per month to support Mary Christine; $86.20 for Carl; and $74.-20 for Forrest, Jr. The figures included expenses for clothing, food, school transportation, school lunches, transportation to Sunday School, and incidental expense for each child. She stated that she thought as far as food was concerned, the children ate as much as adults, and that the cost of maintaining the children was twice as much at the present time as it was when they were all in elementary school. At that time their clothing requirements were not as much. She detailed the increase in the cost of children's clothing since they were older and required more expensive

clothing. She denied saying that she could take care of the children on $120 per month, and stated she did not tell defendant that she was getting along perfectly well and needed no additional money.

James E. Clark, Principal of the Jefferson Junior High School in Columbia, testified that Mary Christine was a very satisfactory student, well behaved, well disciplined, self-disciplined, and a good citizen.

John Wesley Mayhew, Principal of the West Boulevard Elementary School, testified for plaintiff. He stated that the Wonneman children attended his school; that he knew them; that they got along nicely in school, making at least average grades; that the school furnishes lunch at 25 cents per day per child, or $1.25 per week; and that he knew that Jackie had been enrolled in the Public School Reading Clinic so as to build up his confidence a little bit in his oral reading ability.

Nadine Mills Coleman, a neighbor, testified that she knew the children and that they were all well behaved.

Mrs. Wonneman, recalled, testified that the reading superintendent of the Columbia school system recommended that Jackie enter the reading clinic that summer. She stated that she thought it was necessary for him to do this, and that was the reason she wanted the child during the summer.

Eldo Throckmorton, a social worker and director of the Boone County Welfare Office, testified for the defendant. He had been employed by the State Department of Health since 1942. As a part of his work it was necessary for him to know the calorie needs, housing needs and personal expense needs of persons of various ages and sexes. It was a part of his responsibility to work with figures which the Division of Public Health had established purporting to set standards on those items. During the last five years he dealt with cases involving the welfare needs of children of various ages and sexes. By using the standards established by the Division of Welfare he determines what the requirements of decency are for housing, health, and well being. In answer to a hypothetical question, this witness was permitted to testify that the amounts it would take to decently feed, clothe, and provide for the children in question were: for Mary Christine $33.59 per month; for Carl $34.36 per month; and for Forrest, Jr., $28.85 per month.

On cross-examination the witness testified that the figures which he used, as developed by the Division of Public Welfare, were for the purpose of determining eligibility for public assistance. He assisted in compiling these figures while a director at Camden County. He stated that the Division of Welfare has not classified Boone County any differently than Camden County. The figures used do not include school lunches, bus transportation, social activities, dental bills, picture shows, or football games, but did include food, clothing, and personal expenses such as hair cuts and cosmetics for girls, and such personal expense as tooth paste.

From defendant's testimony it appears that in 1955 he received a total of $3,018 in rent from his property located in Mexico; $1,870 from the sale of cattle; and $72.40 in dividends from insurance policies. This made a total income of $4,960.40. He listed his expenditures, supplies for his farm, farm labor, fees to the Angus Cattle Association for registration transfers, electric bills, doctor bills, oil and gas, expenses in connection with rental houses, taxes, and interest, as totaling $3,896.02. He stated that his net income, after deducting expenses and the $120 a month paid for the support of the children, amounted to $94.38. He stated that during the last year he borrowed money from the bank for his support. He owed the First National Bank $8,000.

On cross-examination defendant testified that his net worth had increased since November 5, 1954, and that he was in a

better position since the first of January (1956). He stated he probably would make more money on his cattle and other stock. He sold some cattle in 1956, but could not estimate the number sold without looking at his records. He stated he couldn't estimate within $5,000 what his income had been during the first five months of 1956. He testified:

"Q. You don't know whether it has been 5 or $10,000? A. No, I never figure my income until the end of the year.

"Q. You don't have the slightest idea what you have done out there this year? A. No, sir, I wouldn't.

"Q. Most of us have a rough idea. A. Well, I don't."

It is urged that the judgment should be reversed for the reason that plaintiff's motion failed to state a cause of action, in that there was a failure to allege that defendant was possessed of sufficient income or property to warrant an increase in the allowance to plaintiff for the support of the children.

■ A party seeking relief by way of a petition or motion is only required to set forth a plain statement of the facts showing that he is entitled to such relief, and a demand for judgment. If a recovery of money is demanded, the amount shall be stated. Section 509.050. (All statutory references are to RSMo 1949, V.A.M.S.) He is not required to plead evidence, but only ultimate facts.

The allowance in question was made under § 452.070. By said section it is provided that when a divorce shall be adjudged the court shall make such orders respecting the care, custody and maintenance of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be reasonable. It is further provided that the court may, on application of either party, make such alteration from time to time, as to maintenance, as may be proper.

■ The purpose of the statute, § 452.070, is to provide a mode of procedure for determining in advance the extent of the husband's common law obligation for the support of his minor children. Gardine v. Cottey, 360 Mo. 681, 230 S.W.2d 731, 18 A.L.R.2d 1100. Under the statute, and the decisions construing same, the allowance must be reasonable, and in ascertaining the amount thereof the circumstances of the parties, including the financial ability of the father, must be considered. However, those circumstances are not ultimate facts, but constitute merely evidence to aid the court in fixing the amount reasonably necessary for the support of the children. For that reason, it is not necessary to plead the financial ability of the father to meet the allowance requested.

■ Furthermore, even if the motion were deficient, as claimed, it would not, under the state of the record, call for a reversal of the judgment. Defendant made no attack on the pleading prior to trial. In his countermotion he raised the issue of his ability to pay the increase demanded, and offered evidence in support of such plea. Plaintiff offered evidence of defendant's financial worth. There was then presented to the court evidence of defendant's financial ability. Under such circumstances, it became the duty of the court to make a finding without regard to technical objections in respect to the pleadings. Lewis v. Lewis, Mo.App., 301 S.W.2d 861; S v. G, Mo.App., 298 S.W. 2d 67.

It is next urged that plaintiff failed to prove that the amount of the increase was necessary for the support of these children. In support of this contention it is pointed out that the claim rests solely upon plaintiff's uncorroborated testimony, which is opposed to the testimony of defendant's disinterested witness, Throckmorton, who testified that $96.80 per month was reasonably sufficient to support the three children within the standards set

up by the welfare department for children in the community in which they live.

Plaintiff's testimony was based upon actual expenditures made. These were detailed in a list compiled by her and, in our judgment, do not seem unreasonable. They were not fanciful or extravagant, as defendant claims. The evidence shows that all three children are of school age and that one of them will probably require great care and attention for some time. On account of their advanced age their requirements are greater than they were at the time of the original decree, and by reason of the increase in the cost of living more money will be required to meet those needs.

■ Much stress is laid on the testimony of witness Throckmorton, but in evaluating his testimony it should be borne in mind that the amount he gave as sufficient for support of these children was based on figures compiled for the purpose of determining eligibility for public relief. These children should not be confined to such standard. Montgomery v. Montgomery, Mo.App., 257 S.W.2d 189; Prindle v. Dearborn, 161 Misc. 95, 291 N.Y.S. 295. Nor does the fact that plaintiff's testimony was uncorroborated render it unacceptable as convincing evidence of the needs of the children. There is no rule of law which requires corroboration in such matters. Plaintiff's testimony on this phase of the case seems convincing. However, the trial court allowed her substantially less than the amount requested. We cannot say that the allowance made was not reasonably necessary to meet the needs of the children, or that the trial court abused its discretion in so finding.

It is next urged that plaintiff failed to prove that defendant's income was sufficient to pay such increase. It is true that defendant gave testimony to the effect that his income for 1955 was insufficient to cover the expense of maintaining himself and wife, and the allowance for the support of the children. When asked about his 1956 earnings, defendant professed an inability to even estimate the extent of his earnings without an examination of his records. His reticence on the stand leads us to believe that he has minimized the exact extent of his income and the amount and value of his property. But, be that as it may, he did disclose that he owned real estate of the admitted value of $35,000, and personal property amounting to $5,000. In addition, he holds policies of life insurance having a cash surrender value of $27,090. His debts amount to $9,000, which makes a total net worth of $58,090.

■ Whether or not the court's allowance is reasonable should be determined not only upon a consideration of defendant's income, but also upon the amount of property he owns. So long as the father, who is primarily liable for the support of his children, has property sufficient to meet their needs, the children should not be deprived of a decent home and adequate support. Converse v. Converse, 225 Iowa 1359, 282 N.W. 368. It will, indeed, be unfortunate if defendant finds it necessary to encumber or dispose of a part of his property in order to maintain his children. But it is better that they be properly maintained and educated during their tender years than be left an inheritance preserved at the expense of their present needs and comfort.

■ It is next urged that the court erred in not awarding defendant custody of the children, as prayed in his countermotion. In support of this contention the argument is advanced by appellant that he could maintain the children for less money if he were granted their custody, and that they would have at least equal advantages as far as home and school facilities were concerned as they now have. It is pointed out that the cost of bus transportation would be eliminated; the food bill would be reduced by reason of the fact that a great part of the food consumed in defendant's household is raised on the farm;

and that the clothing costs would be cut to a sane and reasonable outlay. It is also urged that a farming vocation would be open to the boys, a knowledge of which could be gained through experience each day before and after school and during the vacation period. Defendant professed deep affection for each and every one of his three children, and a strong desire to have their custody.

We have taken note of appellant's arguments but are not convinced that they are sufficient to warrant a change in custody. The children have been with their mother for approximately eight years. They have been taken care of in a satisfactory manner. No suggestion is made to the contrary. If given to defendant they would share the home with defendant's fourth wife and her fifteen year old son. We know nothing of defendant's present wife except that she works as a checker in a grocery store. She was not put on the stand at the trial. There was no testimony that she would welcome the children in her home. In our judgment, it would be unwise to mix the two families without further evidence concerning the defendant's present wife and her son. The court did not err in overruling defendant's motion.

It is next urged that the court erred in permitting plaintiff to testify as to the corrective reading needs of Forrest Wonneman, Jr., for the purpose of changing the custody of said child during the three summer months of 1956. The basis of the objection was that the matter was not pleaded. On the basis of this testimony, the court made the following finding:

"The Court doth find that said Forrest A. Wonneman, Jr., requires special corrective reading during the months of June, July and August of this year and that such a course is necessary to his best interest and general welfare. The Court further finds that such a course is available at the Columbia Public Schools at Columbia,

Missouri. If such a course of approximately equal rating and service is not available at Mexico, Missouri, during said period where said child is now with his father, then such child shall be enrolled in the said course at the Columbia Public School and remain in the home of the mother of said child during said period."

It will be observed that the testimony complained of was directed to the matter of change in the temporary custody during the three summer months of 1956. That time has long since passed and whether it was error to admit the evidence is a moot question. It could have no effect on the live questions now before this court. However, in this connection, we feel constrained to again call to the aid of the trial court's ruling the principle announced in S v. G, Mo.App., 298 S.W.2d 67, loc. cit. 74, as follows:

"Once the issue of the welfare of the child has been submitted to the court, that court must of necessity make such orders as are proper to accomplish such welfare, and technical objections in respect to pleadings on a motion to modify should not prevent a decision on the merits. Technical rules are not given serious consideration. Sanders v. Sanders, 223 Mo.App. 834, 14 S.W.2d 458. The court may award custody even though no request therefor has been made in a petition. And the books contain many cases where the court has disregarded the prayers of both parties and awarded custody in a manner not asked for by either."

See also, Lewis v. Lewis, Mo.App., 301 S.W.2d 861, loc. cit. 863. We hold against appellant on this point.

Appellant's final point is that the allowance of $500 as an attorney's fee is excessive.

Plaintiff was represented in this matter by two law firms—Clark & Becker of Columbia, Missouri, and Barnes & Barnes of Mexico, Missouri. Mr. Boyle G. Clark testified that in September, 1955, he had a conference with plaintiff, and a conference with Mr. George Spencer who was then representing defendant. The purpose of the conference with Mr. Spencer was apparently to effect a settlement of the controversy. Thereafter, Mr. Spencer withdrew from the case and further negotiations were had between Mr. J. W. Buffington, defendant's present attorney, and Mr. Latney Barnes. In November, 1955, Mr. Barnes drafted a motion to modify the decree. Later, this motion was modified in certain respects. There were then further negotiations between the attorneys looking toward a settlement of the matter. The motion to modify was prepared in its final form by Mr. Clark and forwarded to Mr. Barnes to file in the Audrain County Circuit Court. This was done on January 13, 1956. According to Mr. Clark, there were "continuous negotiations" between the parties. Thereafter, on May 4, 1956, counsel for defendant filed a motion to strike certain portions of plaintiff's motion. By agreement, this motion was argued at Paris, Missouri, before Judge Roy B. Meriwether who acted as special judge in the trial of this case. Plaintiff was represented at that hearing by Mr. Robert C. Smith, Jr., one of the junior counsel in Mr. Clark's office. Mr. Clark, in further detailing the work done in connection with this case testified:

"In addition to the preparation of the motion, and negotiations with Mr. Spencer * * * the argument of the matter at Paris, and the hearing here, of course, I had the usual effort of getting witnesses together, interviewing witnesses, which I did myself. I think I interviewed all of these witnesses, I don't think I asked anybody else to do it, and then of course, the days hearing here, so there have been two full court days on it. * * * I would say that handling a matter of this sort, the trouble we have been to, negotiations, some of which are not very pleasant, I feel a fee of $750.00 is reasonable. * * * However, * * to be entirely reasonable, we agreed that we would ask a fee of $500.00, which is more than reasonable."

The amount of an allowance of this character rests within the discretion of the trial court, such discretion to be exercised in view of all the circumstances, including the amount and character of the services rendered, the degree of responsibility imposed or incurred by the attorney, and the degree of professional ability, skill and experience called for and exercised in the performance of the services. The financial condition of the party against whom the allowance is made should also be considered. The final judgment should be an amount that public standards will approve for the work done, the time consumed, and the skill required. The exercise of discretion in such matters will not be interfered with by the appellate court unless it has been manifestly abused. Boll v. Boll, Mo.App., 287 S.W. 834; Baer v. Baer, Mo.App., 51 S.W.2d 873. We see no reason for interfering with the discretion exercised by the trial court in this case.

It follows from what we have said that the judgment of the circuit court should be affirmed. It is so ordered.

RUDDY, P. J., and MATTHES, J., concur.