Byron B. GROSS (Plaintiff), Appellant,

v.

Vivian GROSS (Defendant), Respondent.

No. 30030.

St. Louis Court of Appeals.

Missouri.

Jan. 6, 1959.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 2, 1959.

Adolph K. Schwartz, St. Louis, for appellant.

Milton I. Goldstein, Elmer Price, St. Louis, for respondent.

DOERNER, Commissioner.

This is an appeal by plaintiff, Byron B. Gross, from an order sustaining the motion of defendant, Vivian Gross, for an allowance of attorneys' fees and suit money in connection with a suit for divorce. The parties effected a reconciliation before the action was tried. On a prior motion for alimony pendente lite, suit money, and attorneys' fees, the lower court had allowed defendant the sum of $750 for attorneys' fees "on account", and $150 for suit money. By the order from which this appeal was taken the court below allowed defendant an additional sum of $216.26 for suit money and "the further sum of $5,000 (in addition to $750 heretofore ordered) for defendant's attorneys' fees in full." No point is raised as to the amount allowed for suit money.

The evidence showed that plaintiff and defendant were married on January 15, 1939. Two children were born of their union, a girl, Karen, aged 13 in April, 1957, and a boy, Howard, who at that time was 9 years old. Plaintiff left defendant and his family on November 2, 1956. Defendant retained an attorney on November 22, 1956, following which conferences towards a reconciliation were held by him with counsel who represented the plaintiff.

Defendant's efforts towards a reconciliation proved fruitless. Plaintiff insisted that he wanted to obtain a divorce and filed an action therefor in the St. Louis County Circuit Court on February 27, 1957. On March 18, 1957, an entry of appearance and answer was filed by defendant, as well as a motion for alimony pendente lite, suit money and attorney's fees. The motion was heard on April 26, 1957. On April 29, 1957, the court sustained the motion and ordered plaintiff to pay defendant the sum of $300 per month alimony pendente lite; $170 per month for the support of Karen; $130 per month for the support of Howard; $750 for defendant's attorney's fee, on account; and $150 for suit money. These amounts were paid.

Subsequently, on May 10, 1957, defendant filed an answer and cross-bill in which she asked for a divorce from plaintiff. The case was docketed for trial on May 27, 1957, but was continued because of the illness of the trial judge. While the case was in that status, plaintiff went to Las Vegas, Nevada, on August 4, 1957, and on September 18, 1957, filed a suit for divorce in that city, alleging in his petition that he

was a resident of that city and state. The next day there was filed in this action, on plaintiff's behalf, a memorandum attempting to dismiss this suit. Thereafter, counsel for defendant filed a motion attacking the dismissal and asking for an order restraining the plaintiff from prosecuting the suit he had filed in Nevada. This motion was sustained, and on October 7, 1957, the court made an order restraining the plaintiff from proceeding with his Nevada action. The order was served on plaintiff, as well as on his Missouri attorney.

Thereupon, on October 10, 1957, plaintiff returned to St. Louis. More conferences occurred between counsel for the respective parties. While these were taking place plaintiff and defendant, happily, effected a reconciliation and plaintiff returned to the family residence on October 21, 1957. In the interim, on October 7, 1957, defendant had filed this motion for additional suit money and attorneys' fees, pending the trial on the merits. After the reconciliation the motion was presented and heard on October 25, 1957, resulting in the allowances heretofore mentioned.

Plaintiff's transcript on appeal included only the evidence introduced in the hearing on October 25, 1957, on defendant's motion for additional suit money and attorneys' fees. In the main, such evidence concerned the nature and extent of the legal services performed by defendant's attorneys. However, a copy of the plaintiff's 1956 income tax return was introduced, as well as some other evidence concerning the plaintiff's assets. Also, the defendant testified that she was devoid of any means to compensate her attorneys, and that she was asking the court to determine the value of their services. Thereafter defendant filed what is termed a "supplemental transcript", incorporating the evidence produced before the court on April 26, 1957, on defendant's motion for alimony pendente lite, suit money and attorneys' fees. Most of the evidence adduced at that hearing related to the defendant's lack of sufficient means to support herself during

the pendency of the suit, or to prosecute the same, and to the plaintiff's income and financial status.

Plaintiff has moved to strike the supplemental transcript filed by defendant on the grounds that the two hearings were separate and unrelated, and that the evidence introduced at the earlier hearing is not a part of the record of the second hearing. Defendant contends, and plaintiff denies, that she is entitled to file the supplemental transcript under that part of Supreme Court Rule 1.04(a), 42 V.A.M.S., which provides for the filing of " * * * such additional part of the record as he (respondent) deems necessary." Hence the determination of plaintiff's motion to strike would seem to turn on whether or not, under the facts of this case, the evidence introduced at the earlier hearing can be considered as a part of the record of the second hearing.

Under the decisions of our courts, an application for alimony pendente lite, including suit money and attorneys' fee, as authorized by our statute, Section 452.070 RSMo 1949, V.A.M.S., is a separate and distinct proceeding from the divorce case, but is incidental thereto. State ex rel. Gercke v. Seddon, 93 Mo. 520, 6 S.W. 342; Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460. The basis for the allowance is the insufficiency of the wife's means to support herself or to defray the expenses of the litigation in which she is engaged, and the financial ability and responsibility of the husband to do so. Arnold v. Arnold, Mo., 222 S.W. 996; Hopkins v. Hopkins, Mo.App., 260 S.W.2d 833. Such an allowance is largely within the discretion of the trial judge, and his decision will not be interfered with on appeal unless it has been manifestly abused. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455; Gregg v. Gregg, Mo.App., 272 S.W. 2d 855.

Allowances for alimony pendente lite, suit money and attorneys' fees are temporary in nature, pending the final disposition of the divorce action on its merits.

Our Supreme Court early recognized that they "may be increased if necessary as the suit progresses." Waters v. Waters, 49 Mo. 385, 388. It should be noted that in this case the trial court specifically provided in its order of April 29, 1957, that the allowance of $750 for attorneys' fees was "on account." Obviously the court had in mind the possibility of a further allowance, either as the suit progressed, or in connection with the trial on the merits, when it would be more fully informed of the nature and extent of the legal services rendered defendant, and in a better position to judge the reasonable value of such services. In that respect, then, the determination of the final allowance for attorneys' fees made to defendant in this case was so closely connected with the original allowance as to be in effect all one proceeding. The same judge who made the original order for the allowance for attorneys' fees on account likewise presided at the hearing on the final allowance. In fact, he had heard and ruled on motions connected with the taking of depositions, the plaintiff's suit in Nevada, and other matters, and was thoroughly familiar with the case from its inception.

Plaintiff cites Fullhart v. Fullhart, 109 Mo.App. 705, 83 S.W. 541, in support of its contention that for the evidence of a prior hearing to be admissible at a later hearing on a motion such as this, the earlier evidence would have to be resubmitted at the later hearing. We have read and re-read that case and are unable to find any reference therein to the question presented. In the case of Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460, the trial court made an allowance of alimony pendente lite. After the case was tried on its merits, and an appeal taken from an adverse decision, the wife filed a motion for alimony and suit money pending the appeal. Counsel merely read the motion but declined to be heard on it, and the motion was overruled. Subsequently the wife attacked the validity of the order overruling the motion on the grounds that no evidence had been heard in support of it, and that the court should

have dismissed the motion rather than overruled it. Pointing out that evidence had been heard by the court on the first motion for alimony pendente lite and suit money, and at the trial of the case on its merits, the Supreme Court said (166 Mo.App. 244, 245, 148 S.W. 462):

"Though the motion (for alimony on appeal) related to an independent proceeding, it was a proceeding that was engrafted on the action for divorce, and the court was bound to take judicial notice of the evidence heard at the trial of the suit on its merits which pertained to the issues of alimony and suit money. This evidence was fresh in the mind of the court, fully covered the issues raised by the motion, and it would be absurd to say that the court, in order to act intelligently on the motion, was bound to hear anew evidence already lodged in his breast."

To the same effect is an earlier and a later case of this court, Rosenfeld v. Rosenfeld, 63 Mo.App. 411, and Jones v. Jones, Mo. App., 164 S.W.2d 162. Since it is proper for the trial court in a case of this nature to consider the pertinent evidence introduced at an earlier hearing; it follows that it is a part of the record to be considered by us, and that defendant was entitled under Supreme Court Rule 1.04(a) to file the transcript of the record made at the hearing on her original motion. Accordingly, the plaintiff's motion to strike the supplemental or additional transcript should be overruled.

■■ Plaintiff's first and third assignments of error are that there was no competent evidence as to the amount of time defendant's attorneys had spent in the matter. The point attempted to be made relates to the testimony of Mr. Goldstein, chief counsel for defendant, in support of the motion. While responding to questions propounded by Mr. Elmer Price, one of his partners in the firm formed while this litigation was pending, the transcript shows that the following occurred:

"Q. Mr. Goldstein, do you know of your own knowledge the amount of time that has been spent by you and your firm on this matter? A. Yes, we keep time cards.

"Mr. Schwartz: I object to that. The time cards would be the best evidence.

"A. I have them with me.

"Mr. Price:

"Q. What do the records indicate? A. 287¾ hours have been devoted to this case.

"Q. And of that time, Mr. Goldstein, how much of that time was yours? A. 193¾ hours. You, Mr. Price, spent about 84 hours, and about ten hours of the time was devoted by Mr. Tucker and Mr. Chasnoff. I might say, with reference to my time, the 193 hours represented between fifteen and twenty percent of my productive time for a year. My records indicate that I put in between 1,000 and 1200 working hours a year."

Plaintiff makes the point that inasmuch as the time cards were not formally introduced in evidence that there was no way for the court to know how many hours were spent jointly by Mr. Price and Mr. Goldstein, or whether the services rendered by them were reasonable and necessary. There is also a mild complaint by the plaintiff that the trial court did not rule on the admissibility of Mr. Goldstein's testimony regarding the total number of hours, but as the foregoing passage from the transcript shows, plaintiff did not press but abandoned his objection and the evidence as to the number of hours came in without objection. In fact, the transcript shows that on cross-examination counsel for plaintiff requested Mr. Goldstein to refer to his time records in answering counsel's questions. Furthermore, as will be subsequently detailed, Mr. Goldstein had personal knowledge and testified at length as to the services rendered by him and by the members of his firm, and, on cross-examination, rebutted the suggestion of unnecessary duplication of effort. We think, therefore, that there was sufficient competent evidence before the trial court as to the nature and extent of the services rendered and the amount of time they required. Furthermore, the time required is only one of a number of factors to be considered in the determination of a reasonable fee. Supreme Court Rule 4.12.

█ Plaintiff's second assignment of error is that there was no competent evidence of the income or financial worth of the plaintiff upon which the trial court could base the order made. What plaintiff actually argues, however, is that the award was excessive when viewed in the light of plaintiff's ability to pay, which is, in fact his fourth, final, and primary point on this appeal. Both parties agree with the proposition, as stated by plaintiff, that "each particular case involving attorneys' fees is properly decided upon its own facts in evidence." Further, they seem to agree that the amount of such an allowance rests largely within the discretion of the trial court, and that in exercising its discretion the court should consider, among other factors, the nature and extent of the legal services rendered, the responsibility assumed, the results obtained, the professional ability and skill required, and the financial condition of the husband. Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71. They vary widely, however, on the emphasis they place upon these factors and upon the evaluation of the services rendered. In answer to a question propounded to him during the argument, counsel for plaintiff stated that it was his opinion that a total of $1,500 would be a reasonable allowance. In the hearing before the trial court, Mr. Goldstein valued the services rendered at $25 per hour, or a total of over $7,100. In this he was supported by the testimony of Mr. John H. Lashly, who qualified as an expert witness, and in answer to a hypothetical question gave it as his opinion that a reasonable attorneys' fee would be

$7,000 to $7,500. Courts are themselves experts on the question of attorneys' fees, and the judge who personally tries the case and is familiar with all the issues involved is in a position to fix the amount of the attorneys' fee without the aid of evidence. Agnew v. Johnson, 352 Mo. 222, 176 S.W. 2d 489; Fisher v. Peterson, Mo.App., 240 S.W.2d 176.

The evidence showed that from the time defendant had first consulted them until the hearing on the motion for the additional allowance defendant's attorneys had consulted with her on at least twenty-five occasions, some of which were at night and on week-ends. They had eight conferences with plaintiff's counsel, at four of which plaintiff was present. In brief, their services included preparing and filing an entry of appearance and the first answer, and later an amended answer and cross-bill; preparing and arguing a motion to inspect the plaintiff's financial books and records, and preparing a law memorandum in support thereof; making an inspection of such books and records, which required two trips to plaintiff's apartment and his office because all of the records were not produced on the first occasion; upon learning from plaintiff's income tax returns that income had been received on stock in fourteen companies held jointly in plaintiff's and defendant's names, corresponding with their transfer agents, ascertaining that the plaintiff had effected a transfer of these securities to his own name (by unauthorizedly signing his wife's name thereto, as well as his own) and putting such companies on notice of the defendant's interest in the shares of stock; applying for and obtaining a subpoena duces tecum for the production of records in connection with taking plaintiff's deposition; upon taking the plaintiff's deposition defendant learned that plaintiff had withdrawn $17,700 from a joint bank account ten days before the separation, of which he claimed he used $10,000 to pay a debt owed his mother (of which there was no written evidence), and $7,000 to pay his income taxes; obtaining a subpoena duces tecum and making arrangements to take the deposition of plaintiff's mother and his sister, and, after two attempts, obtaining service on them; appearing in court upon a motion to quash the subpoena on the mother, because of her claim of ill health; and obtaining an order permitting the taking of the depositions in the presence of the mother's physician; taking the depositions; preparing the case for trial, which was not held because of the illness of the judge; upon the filing by plaintiff of his suit in Nevada and his attempted dismissal of this suit, contacting an attorney of that state to protect the defendant's interest; researching various legal problems which arose by reason of the institution of that suit; preparing a motion attacking the validity of the dismissal and asking the court to restrain plaintiff from prosecuting the suit in Nevada; presenting the same, obtaining an appropriate order and arranging for the service of the same on plaintiff and his Missouri counsel.

The evidence further shows that plaintiff is a dentist, who has practiced his profession an unspecified number of years and maintains an office in the City of St. Louis. The parties lived in a four-bedroom, two-bath residence numbered 7254 Cornell Avenue, University City, Missouri, the title to which was held in an estate by the entirety, and for which they had paid $27,500. The record is devoid of any evidence of any encumbrance on the property. Defendant drove a 1955 Oldsmobile, but the record is not clear in whose name title was held. Plaintiff drove an Austin Healy, which he had purchased in September, 1956, title to which was in his name. In January, 1957, he had purchased 100 shares of Anheuser-Busch stock.

The lower court had limited the production of the plaintiff's income tax records to the calendar years of 1955 and 1956, but plaintiff testified at the hearing on the original motion for alimony pendente lite that in prior years his gross average earnings were about $20,000 before taxes. His testimony is somewhat difficult to follow,

because he next stated that the normal overhead for the operation of his office was $16,000 per year, yet later testified that he had given his wife roughly $100 per week for food and other household expenses.

In any event, his income tax return for 1955 showed that his gross income from his practice was $47,545.75, his office expenses were $16,426.09, so that his net professional income, including an earned discount of 42 cents, was $31,120.08. In addition, the same year, he enjoyed investment income, including gains from the sale of securities, of $417.87, so that his adjusted gross income was $31,537.95. His income tax return for 1956 showed his gross receipts from his practice were $50,475.45, and his office expenses were $15,500.23, so that his net professional income was $34,975.22. His investment and capital gains income that year were $2,752.23, so that his adjusted gross income before taxes was $37,727.45. Plaintiff explained the disparity between the average annual income of $20,000 in 1954 and prior years, about which he had testified, and his income as shown by his 1955 and 1956 income tax returns, by stating that in the prior years he had worked forty hours a week, whereas in 1955 and 1956 he had worked sixty hours a week. He also testified that his physician had advised him to cut down because of ill effects the longer hours were having on his health, and that he was going back to a forty hour week. However, he conceded that in 1956 he spent the greater part of the month of August in Florida, and in September and again in December had made trips to New York; that in January or February of 1957 he attended a dental convention out of the city, and in March, 1957, he had gone away for a rest, despite which, he testified, his income for the first three months of 1957 was running about the same as it had in 1956. At the hearing on the motion for additional suit money and attorneys' fees no evidence was introduced to show that since the preceding April there had been any reduction in the plaintiff's rate of income.

Other than the residence, held in both names, plaintiff owned no other real estate. He testified that he owned no investments, and despite his transfer of the fourteen stocks to his own name, the value of which is not stated in the record, the argument is made that since defendant had asserted a claim to the stocks as jointly owned, they cannot be considered as assets owned by plaintiff. Reference has been made to the $17,700 withdrawn from the bank in cash shortly before the separation. There was also mentioned in the evidence savings bonds of $4,000, which plaintiff claimed he cashed and used for living expenses.

■ One cannot read the record of this case without coming to the conclusion that the litigation was actively and bitterly contested, step by step, and that the results obtained for the defendant were highly beneficial. The motion to inspect the plaintiff's records was granted in the face of opposition, and the subsequent examination disclosed the very substantial income of the defendant as well as the existence of the stocks mentioned. The motion for alimony pendente lite, again opposed, resulted in an increase over the amount the plaintiff had been paying defendant. The motion to protect the jurisdiction of the court and to restrain the plaintiff from prosecuting his action in Nevada resulted in the abandonment of that action. And upon the return of plaintiff to St. Louis County, the reconciliation followed—which was what defendant had desired in the first place. The fact that there was no trial on the merits is not determinative of plaintiff's responsibility to bear the expenses which the defendant incurred in this suit. For as this court said in Wonneman v. Wonneman, Mo.App., 305 S.W.2d 82, 83, if a husband:

"* * * wishes to engage in litigation with respect to matters connected with his divorce and incidents thereto he should be prepared to pay the expenses thereof which the law has cast upon him. He cannot escape that liability as long as he has sufficient means,

either by way of income or property, out of which it can be satisfied."

█ We have carefully read all of the cases cited by both the plaintiff and the defendant relating to their respective claims of excessiveness and reasonableness of the allowance made. As was said in Stauffer v. Stauffer, Mo.App., 313 S.W.2d 597, 601, of an award for support of a wife, such cases furnish " * * * no fixed precedents, only guides." It is readily apparent that there is and can be no specific formula that has been adopted by our courts in matters of this kind, and that the determination of an amount which is reasonable depends upon the facts and circumstances of each particular case. While the courts, as does a conscientious lawyer, take into account all of the elements of our pertinent canon of ethics, Supreme Court Rule 4.12, in their opinions they have placed some emphasis on two particular factors, the nature and extent of the legal services rendered, and the husband's ability to pay. The determination of an allowance to the wife for a reasonable attorneys' fee is, and of necessity must be, left largely to the discretion of the trial court. Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71, Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426, for the trial court has the parties before it, passes upon such preliminaries as may occur prior to trial, presides at the trial if one is held, and has a much better grasp of all of the ramifications of a case than an appellate court can gain by reading a record. Hence, it is also the rule that an appellate court will not interfere with the exercise by the trial court of its discretion unless it has been manifestly abused. State ex rel. Gercke v. Seddon, 93 Mo. 520, 6 S.W. 342; Simmons v. Simmons, Mo.App. 280 S.W.2d 877; Wonneman v. Wonneman, supra.

█ Taking into account the amount and character of the services rendered, the legal questions presented, the nature of the case, the benefits which resulted to the defendant from those services, the degree of responsibility assumed, the professional skill employed, the casualness of the employment, as well as the very substantial earning capacity of the plaintiff, it does not appear that the amount allowed by the trial court was so unreasonable or excessive as to indicate an abuse of discretion.

For the reasons stated, the Commissioner recommends that the motion of appellant to strike the supplemental transcript filed by respondent be overruled, and that the judgment be affirmed.

PER CURIAM.

The foreging opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the motion of appellant to strike the supplemental transcript filed by respondent is overruled and judgment affirmed.

RUDDY, P. J., and ANDERSON and WOLFE, JJ., concur.