Lambert D. JOHNSON, Jr., Plaintiff-Appellant,

v.

Ann Lovick Floyd JOHNSON, Defendant-Respondent.

No. 34365.

Missouri Court of Appeals, St. Louis District.

May 23, 1972.

Lashly, Caruthers, Rava, Hyndman & Rutherford, Darold E. Crotzer, Jr., St. Louis, for plaintiff-appellant.

Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for defendant-respondent.

LYON ANDERSON, Special Commissioner.

This is an appeal from a judgment in a divorce action brought by Lambert D. Johnson, Jr. against his wife, Ann Floyd Johnson. The grounds for divorce alleged in the petition were general indignities. To this petition Mrs. Johnson filed an answer denying the indignities alleged. She also filed a cross-bill, alleging general indignities as grounds for divorce from her husband. In said cross-bill there was a prayer for alimony, a provision for support of the five children born of the marriage, and a fee for her attorneys.

On the day of the trial plaintiff dismissed his petition and the trial proceeded on respondent's cross-bill. The court found for respondent, granting her a divorce, awarding alimony together with a sum for the support of each child and $25,000 as an attorney's fee. On this appeal the sole contention of appellant Lambert D. Johnson, Jr. is that the allowance of attorney's fee is excessive.

The parties were married January 12, 1951. Five children were born of this marriage; their names and birth dates are as follows: Jennifer, January 26, 1952; Patricia, May 6, 1953; Lambert D. Johnson, III, December 9, 1955; Phillip, May 7, 1957; and Robin, August 15, 1960. The children attended private schools. Phillip at the time of the trial was attending Country Day School and Robin attended Mary Institute, both schools being in the

St. Louis area. Young Lambert attended Eaglebrook School in Deerfield, Massachusetts. Jennifer and Patricia were attending a school in the east.

Mr. Johnson was formerly connected with Mead Johnson and Company of Evansville, Indiana. In 1964 he sold his interest in this company. The family came to Missouri about that time and purchased a house on Foreway Drive in Ladue. The property originally cost $350,000. Thereafter $200,000 was spent improving the property. Title to the house is in Continental Bank and Trust Company of Chicago as trustee of a family trust created by Mr. Johnson's father. The property is free and clear from all liens and encumbrances except for current taxes. The assets of this trust have a value of over $4,000,000. Mr. Johnson has a third interest in sixty percent of the income from this trust. The assets of this trust consist of low yield stocks. Mr. Johnson is receiving a consulting fee from this trust.

There is another trust created by appellant's father. It had a value of $476,094 in 1969. Under its terms the income from the trust is to be paid to appellant for life, and upon his death the assets of the trust are to be distributed to appellant's children. The father died in 1969.

There is also a trust set up by appellant's mother who is still living. It had a value in 1969 of $163,682. Appellant receives the income from this trust and his children are remaindermen. There is a trust created by appellant's grandfather. It has a value of $5,058,443. Appellant has no right to income from this trust but has a one-sixth contingent remainder in the corpus of the trust. There is a revocable trust created by appellant's mother. Its value is $2,543,000. Appellant has received no income from this trust. He is a contingent beneficiary. The children each own securities valued at $10,000 and appellant's mother set up trusts for each child valued at about $119,000 each.

The Johnsons owned a house in Michigan where they spent their summer vacations. Title to this property is held in trust and was valued at $153,111. They also owned a house in Palm Springs. Mr. Johnson owns a duck shooting farm near Gray's Summit, Mo., which cost $118,704.

Mr. Johnson had a salary of $25,000 a year from Mead Johnson and Company and receives consulting fees from that Company and Continental Bank and Trust Company which Company administers the various trusts.

Appellant's counsel made available to respondent's counsel copies of Mr. Johnson's tax returns for the five years prior to the trial. Respondent's counsel testified that these returns revealed that during this period appellant's income averaged, for tax purposes, the sum of $124,000 per year.

At the time this suit was filed plaintiff was represented by Attorney Walter Clark. In February, 1969, Mrs. Johnson consulted Attorney Charles Allen. She did this because she and her husband knew him socially. Thereafter it was agreed that Robert Allen, partner of Charles, would be in charge of the case. Robert Allen was licensed to practice law in 1951. He and his brother were partners in a prominent St. Louis law firm. For ten years prior to the trial below his practice was devoted almost exclusively to litigation. At the time Mrs. Johnson employed the above mentioned attorneys she was very desirous of saving the marriage. To that end her attorneys had numerous conferences with Walter Clark with reference to the matter. The attorneys agreed that the parties should consult Dr. Jule Miller, a psychiatrist, instead of a regular marriage counsellor. The Johnsons agreed and both consulted the doctor. Respondent's attorneys received reports from the doctor, Mrs. Johnson and appellant's attorney from time to time concerning the progress of the treatments, and from these reports it became apparent there was not much progress

being accomplished, at least as to Mr. Johnson. Accordingly, respondent's counsel were advised by Mr. Clark that he thought it hopeless to continue the consultations with the doctor and that he wanted to proceed with the case. When reconciliation appeared hopeless Mr. Allen had several discussions with Mrs. Johnson concerning the material facts including those with reference to Mr. Johnson's finances. They also discussed whether she simply wanted to defend plaintiff's action or in addition to seek a divorce from Mr. Johnson by filing a cross-bill. She finally decided to file a cross-bill. The discussions took place in April 1969.

Mrs. Johnson's attorneys also prepared and filed interrogatories which were directed primarily at Mr. Johnson's financial affairs. About this time Mr. Clark withdrew from the case and Rex Caruthers entered his appearance as attorney for Mr. Johnson. Conversations were had between the attorneys in regard to the interrogatories, and in April or May of 1969 Mr. Caruthers furnished respondent's counsel certain material concerning Mr. Johnson's finances including his Federal and State tax returns for about five years. Respondent's counsel was also furnished a statement of appellant's net worth prepared by Ernst and Ernst, appellant's accountants. This statement showed the net value of the assets owned by appellant in his own name to be $422,390, including oil properties listed as costing $20,000 which in 1968 produced an income of about $90,000. Thereafter a separation agreement was entered into between the parties. Its purpose was to adjust finally whatever rights each had in the property of the other, and to present suggestions to the court with reference to the other issues to be litigated in the event Mrs. Johnson was granted a divorce on her cross-bill. Mr. Allen had numerous meetings with Mr. Caruthers and with Mrs. Johnson before the terms of the document were acceptable to the parties. One of the matters to be resolved was whether she would realize more actual dollars by periodic payments of alimony and support money rather than in a lump sum. Mrs. Johnson's initial preference was in favor of the latter but it appeared that by reason of taxes she would realize more by proceeding on the basis of periodic payments rather than pursuing her lump sum demand. The negotiations then proceeded on that basis. To arrive at an agreement it was necessary to gather information as to the cost of maintaining the house and the amount necessary for Mrs. Johnson to live in the manner in which she had been accustomed. Also the expense of sending the children to school was to be considered.

Finally, an agreement was reached on all matters which were the subjects of negotiations except the amount to be awarded respondent as a fee for her attorneys. This agreement was approved by the trial court. Mr. Allen testified that prior to the trial the time spent on the case was 118 hours and that in view of the amount involved and the responsibilities assumed a fee of $25,000 would be reasonable. Robert P. Elam, an experienced attorney, after hearing the testimony and reviewing the contents of defendant's Exhibit 1, gave it as his opinion that the reasonable value of the services would be $25,000 to $30,000. Norris Allen, a member of the bar for forty-five years, testified he thought a reasonable fee would be $25,000. (He is unrelated to Robert or Charles Allen.)

The agreement provided that it be suggested to the court that Mrs. Johnson be awarded the custody of Jennifer, Patricia, Phillip and Robin, and that Mr. Johnson pay Mrs. Johnson the sum of $185 per month for the support of each child until the child should reach the age of twenty-one years unless the child should die, marry, become emancipated or become a member of the armed forces; that Mr. Johnson have the custody of Lambert D. Johnson, III, who was then fifteen years old; that each party have reasonable visitation rights; that Mr. Johnson pay all the expense of the education of the children

which should continue after the children became twenty-one so long as he or she attended an accredited school or university and was working toward a degree; that Mr. Johnson carry insurance to cover hospital and doctor's bills incurred for the treatment of the children; and that Mr. Johnson alone be entitled to claim the children as dependents for Federal and State income tax purposes. The agreement further provided that Mr. Johnson would attempt to secure the consent of Continental Bank and Trust Co. to permit Mrs. Johnson and the children in her custody to occupy the family home at 24 Foreway Drive, to pay the taxes, insurance and to maintain the exterior of the house in a reasonable condition, and if the property was mortgaged the trust would pay the principal, interest due and satisfy all liens against the property. It was also agreed that if Mrs. Johnson and the children were evicted by the trustee, Mr. Johnson would pay Mrs. Johnson the sum of $150,000 to secure another place to live, and in the event Mrs. Johnson should move of her own choice Mr. Johnson would pay her $125,000. It was also stipulated that in the event of the death or remarriage of Mrs. Johnson the right to the above mentioned payments would terminate. It was further agreed that Mr. Johnson would execute a bill of sale conveying title to the furniture, household goods, appliances, pictures, clothing, jewelry and other items of personal property contained in the house except certain objects of art and furniture listed in a schedule attached to the agreement. It was agreed that Mr. Johnson would assign to Mrs. Johnson the title to a 1967 Oldsmobile Toronado Tudor automobile and a 1968 Oldsmobile Station Wagon. It was provided that Mr. Johnson would pay to Ann Johnson, in cash, at the time of the divorce decree the sum of $10,000 and within nine months after the entry of the decree an additional sum of $10,000; that appellant would pay respondent $3,000 per month alimony, but if she remarried such payments should be reduced to $500; that if Mr. Johnson should die and Mrs. Johnson survive him and at the time had not remarried, the alimony payment would be reduced to $1,500 per month and should become an obligation of Mr. Johnson's Estate, and if Mrs. Johnson should survive Mr. Johnson and at the time was remarried the $500 per month payment should terminate, or if not remarried at the time but later married, the right to the $1,500 per month payment should terminate. In said agreement Mr. Johnson agreed to take out a policy of life insurance for $200,000 with Mrs. Johnson as beneficiary, which policy would be assigned to Mrs. Johnson. Mr. Johnson would pay the first annual premium, but thereafter would have no obligation to keep the policy in force. Accordingly, he would have no right in the policy which by reason of the assignment would be owned by Mrs. Johnson. It was stipulated in said document that Mrs. Johnson would accept the performance of the terms of the agreement in full settlement and discharge of every claim she had or might thereafter have against Mr. Johnson growing out of their marital relationship.

The court found the issues in favor of Mrs. Johnson and ordered that a decree of divorce be entered. Custody of Lambert D. Johnson, III, was awarded to appellant, and the four other children were awarded to respondent. Visitation rights and temporary custody during the summer months were ordered. Appellant was ordered to pay respondent $185 per month for the support and maintenance of each child in her custody, and alimony in the amount agreed upon by the parties. Respondent was awarded the sum of $25,000 as a fee for her attorneys.

As heretofore stated the only point urged by appellant on this appeal is that the allowance of $25,000 as an attorney fee is excessive. The point is without merit.

The amount of an allowance in cases of this character rests within the sound discretion of the trial court, to be exercised in view of all the circumstances, including the amount and character of the services rendered, the degree of responsibility assumed by the attorney, the degree of professional skill and ability required and exhibited in the performance of the services. The financial condition of the party against whom the allowance is to be made is also held a proper consideration in fixing the amount to be allowed. The exercise of discretion in such matters will not be interfered with by an appellate court unless it clearly appears there has been an abuse of discretion.

In the case at bar the evidence shows that extensive legal service of an extraordinary nature was performed by the attorney for defendant. These services were characterized by one competent and expert witness as of the reasonable value of $25,000 and by another equally competent and qualified attorney at $30,000. The net worth of Mr. Johnson was shown to be considerable which is a factor to be considered in making an allowance. Schwent v. Schwent, Mo.App., 209 S.W.2d 546 [5].

After considering the record in this case we do not feel justified in holding the allowance excessive. The judgment should be affirmed. It is so ordered.

BRADY, C. J., and DOWD, SMITH and WEIER, JJ., concur.

SIMEONE, J., dissents as to amount of the fee.

PER CURIAM:

The foregoing opinion by LYON ANDERSON, Special Commissioner, is adopted as the opinion of this court. Accordingly, the judgment is affirmed.