George **BARNHILL**, Appellant,

v.

Pauline **BARNHILL**, Respondent.

No. KCD 28188.

Missouri Court of Appeals,
Kansas City District.

Jan. 31, 1977.

Motion for Rehearing and/or Transfer
Denied Feb. 28, 1977.

C. John Forge, Jr., Independence, for appellant.

Monte C. Phillips, Blue Springs, for respondent.

Before WASSERSTROM, P. J., and SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Presiding Judge.

The parties were divorced in 1968, at which time the custody of the child now in question who was then 5 years old was awarded to the mother, and the father was ordered to pay $100 per month for its support. In June, 1975, the mother moved under § 452.370 RSMo 1969 for an increase in the amount of that child support. After a hearing in July, 1975, the court granted an increase to $450 per month and allowed $600 to the mother as attorney's fee. The father appeals, assigning as error: 1) that the court modified the decree without evidence of the father's ability to pay; 2) that the increase in child support was an indirect method of paying maintenance to the mother; and 3) that the award of attorney's fees was excessive.

■ With respect to the father's ability to pay, the evidence shows that he is the president of two businesses, George Barnhill Trucking Company and George Barnhill Trucking Company, Incorporated. The evidence further shows that his income from the first of those companies in 1974 was $3,222.48 per month and his income from the other company was $1,083.33 per month, making a total aggregate annual income from those sources of $51,669.72. This income figure is to be compared with that which he had at the time of the divorce in 1968, which was $20,000 per year. This evidence amply supports the trial court's conclusion that the father is able to pay the increased child support awarded. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ With respect to the father's second point, the pertinent evidence is as follows. The mother has a total income of $190 per month consisting of $100 child maintenance paid by the father and $90 per month received as Aid for Dependent Children. The mother has become unable to work because of cervical cancer and the treatments which she has been receiving for that condition. She gets along financially by the small monthly income mentioned together with help from friends and a married daughter and assistance by the food stamp program and a welfare department medical card.

In the course of cross-examining the mother, the father's counsel attempted to pin her down as to the amount of money which she spent for support of the child. Counsel drew out certain monthly figures which he tabulates in his brief in this court as follows:

| | |
|---|---:|
| School Tuition [parochial junior high school] | $ 30.00 |
| Clothes | 50.00 |
| Food | 150.00 |
| Rent | 145.00 |
| Entertainment | 30.00 |
| Bus | 7.00 |
| Medical | 10.00 |
| Car Expenses | 5.00 |
| School Expenses | 10.00 |
| Insurance | 20.00 |
| Total | $457.00 |

With respect to two of these items, namely food and rent, the mother admitted that the figures given reflect in part benefit to herself as well as benefit to the child. On the basis of that concession, the father now erects his whole argument that a major

part of the increased award constituted in effect an indirect or disguised belated award of alimony to the mother. The major fallacy of this argument lies in the fact that the father's tabulation of expenses set forth above does not represent the full extent of expenses on behalf of the child which would be made were the funds available.

Thus, in addition to the items listed, the mother testified that the child at one time was receiving organ lessons at a cost of $8 per week but that these lessons had to be discontinued because of lack of money. In addition, utilities cost approximately $70 per month. Further, a desirable hospital plan would cost at least $30 per month. Still further, food for the child's pets runs at approximately $25 per month. Still further, the automobile which is used in part to transport the child requires repair in some unspecified amount. And on top of all that, the child needs special dental work at a cost of $500 to $600. These additional items substantially offset whatever personal benefit the mother receives from the tabulated expenditures. Also to be noted is that many of the figures listed in the above tabulation are merely estimates largely suggested for each category by the father's attorney as part of his cross-examination, and those figures are lower in some instances than somewhat higher estimates given by the mother in her direct testimony.

■ Moreover, some of the items of expense claimed, principally that for rent, can be considered overly modest, arising from the all too apparent fact that this mother and daughter have been suffering in the recent past from severe financial stringency. Many budget items such as rent and food are flexible, depending in amount on how much money is available. This child's standard of living, particularly in view of the father's substantial income, should not be held to a minimum, bare subsistence level. *Wonneman v. Wonneman*, 305 S.W.2d 71, 79 (Mo.App.1957); *Montgomery v. Montgomery*, 257 S.W.2d 189, 197–98 (Mo.App.1953); *Houston v. Sny-*

*der*, 440 S.W.2d 156, 159 (Mo.App.1969). The amount of additional support from the father necessary to accomplish an appropriate improvement should not be withheld merely because that may unavoidably result in some incidental personal benefit to the custodian mother.

■ Appraising the whole record, the trial court concluded that the care and support of the child alone, apart from any consideration of maintenance to the mother warranted the increased figure of $450. The finding of the trial court in this respect was: "I find that as custodial parent the expenses in maintaining a home for the child, providing food, clothing and shelter to be something in the neighborhood from $400.00 to $500.00 per month on a reasonable basis; and that those items include the necessary dental care, reasonable food, reasonable clothing, reasonable transportation as needed for the child." The amount to be awarded as child support is a matter resting in the sound discretion of the trial court. *Fugate v. Fugate*, 510 S.W.2d 705, 706–07 (Mo.App.1974); *Rodgers v. Rodgers*, 505 S.W.2d 138, 144 (Mo.App.1974); *Houston v. Snyder, supra* at 159; *Murray v. Murray*, 538 S.W.2d 587, 588 (Mo.App.1976). The finding of the trial court cannot be said to be contrary to the weight of the evidence and therefore must be affirmed. *Murphy v. Carron, supra.*

■ Coming now to the father's third point respecting the amount of attorney's fees, the mother's attorney testified that he had devoted 25.4 hours to this matter and requested payment at $40 an hour, which would have resulted in an award of $1,016. The trial court awarded a lesser sum, namely $600. The trial judge is himself an expert on the matter of attorney's fees. *Cascio v. Cascio*, 485 S.W.2d 857 (Mo.App.1972); *Gross v. Gross*, 319 S.W.2d 880 (Mo.App. 1959); *Housing Authority v. Baumann*, 512 S.W.2d 436 (Mo.App.1974). The award of fees rests peculiarly within his discretion and will not be interfered with absent a manifest absence of discretion. *Keefe v.*

*Keefe,* 435 S.W.2d 313 (Mo.1968); *Johnson v. Johnson,* 481 S.W.2d 543 (Mo.App.1972); *L\_\_ J\_\_ S\_\_ v. V\_\_ H\_\_ S\_\_,* 514 S.W.2d 1 (Mo.App.1974). There was no abuse of discretion here.

The disposition of this case by affirmance renders it unnecessary to pass upon the mother's motion to dismiss the appeal.

Affirmed.

All concur.