Shirley KAYE (Plaintiff), Respondent,

v.

Hyman H. KAYE (Defendant), Appellant.

No. 30215.

St. Louis Court of Appeals.

Missouri.

Sept. 15, 1959.

Eugene Portman, Cox, Cox & Cox, Harvey B. Cox, St. Louis, for appellant.

Susman, Mayer & Willer, Gerald A. Rimmel, Earl Susman, St. Louis, for respondent.

MARSHALL CRAIG, Special Judge.

This is an appeal by defendant, Hyman H. Kaye, from an order sustaining the motion of plaintiff, Shirley Kaye, for an allowance of alimony pendente lite, support for minor children, and attorneys' fees and suit money in connection with a suit for divorce.

Plaintiff's petition, filed on April 3, 1958, alleged the marriage and the grounds for divorce; that plaintiff and defendant were married on or about November 3, 1946; that they were separated on or about the first day of January, 1959; and that two children were born of the marriage, Lawrence Alan Kaye, a son, "approximately nine and one-half years of age" and Terry Lynn Kaye, a daughter, "approximately eight years of age." On April 22, 1958, plaintiff filed her "motion for alimony pendente lite, child support, attorney's fees and court costs." On May 2, 1958, defendant filed his answer to plaintiff's petition for divorce, admitting the marriage and the birth of the two children, but denying the other allegations in the petition.

The trial court heard plaintiff's motion on May 8, 1958. The evidence produced at the hearing on the motion disclosed that during the marriage and after the separation the plaintiff lived in a six room, two bath, ranch type house purchased in March, 1954, for $26,001; that the title was in the name of both plaintiff and defendant, and that the house was free of liens and encumbrances; that after the purchase of the house a rathskeller was added for $3,500–$4,000 and other additions at a cost of from $1,700 to $2,000; that the house was furnished and that she paid no rent and that the defendant had paid the taxes in the past; and that she had not paid taxes or insurance for the year 1958.

The evidence further showed that the defendant owed the Mutual Bank & Trust Company a loan with a balance due of $13,400. As security for this loan, the bank held as collateral the following shares of stock having the following closing figures for the sale per share as listed on the New York stock exchange: 100 share of DuPont (178⅞), 200 shares

of U. S. Steel (61¾), 300 shares of Standard Oil of Indiana (43⅜), 400 shares of Youngstown Sheet & Tube (85), 100 shares of Union Oil of California (47½). The ledger sheets from the bank showed a balance in the account of the State Bar (an enterprise owned by defendant) on May 7, 1958, of $2,478.87 and that the account had remained somewhat constant between December 31, 1956, and May 7, 1958; that defendant's savings account in the same bank was shown to have a zero balance and to have been closed out on February 4, 1958. The records of the brokerage firm of Merrill, Lynch, Pierce, Fenner & Smith showed that there was a margin credit balance in the name of the defendant of $10,692.07, subject to a short sale of 100 shares of Pittsburgh Plate Glass of a par value of $10; that said shares were shown to have a closing figure of 74⅛ per share; that defendant's account also had a credit balance of $180 subject to no charge; and that the records from the same company showed stock market activities of defendant which resulted in a profit of $500 and another transaction wherein the defendant on March 7, 1958, had sold some stock of Pittsburgh Plate Glass for $7,128.07.

Plaintiff testified that defendant owned the State Bar and had a stock interest in the Laclede Operating Company and that in 1957 he had had a net income of a little better than $16,000 and a similar income in prior years from the State Bar; that two years previously the defendant had been offered $22,000 for the purchase of the State Bar but that he was asking $25,000 for it; that the business of the Laclede Operating Company was running the Laclede Hotel and that defendant was the manager for the hotel and received a salary of $6,500 a year and that defendant had placed a value of $45,000 on his shares of stock in the Laclede Operating Company; and that the plaintiff held a one-sixth stock interest in the Laclede Operating Company in her individual name, which according to the testimony was one-half the number of shares owned by defendant.

Plaintiff testified that the defendant was active in the stock market; that he owned one share in an investment club in which the initial investment three years ago was $500 and the dues are $20 per month; that he had two $10,000 life insurance policies, one of which is GI, and that he owns a 1952 Chevrolet, a 1955 Chevrolet, and a 1957 Buick Station Wagon (plaintiff had the use of the station wagon); that defendant owned a diamond ring for which he had paid $3,000 three years ago; that he had tried to sell it for $4,700; that defendant had a little money at home and plaintiff had deposited that to the checking account so she could write checks, and that her husband had given her no money since the separation; that plaintiff and defendant had filed joint income tax returns for several years; that the joint return for the year 1957 showed income of $26,851 and that in that year her income had been $650; that the joint return for the year 1956 showed adjusted gross income of $30,000 and that her income for that year had been $639.40; that the joint return for 1955 showed income of $26,235.34; and that the joint return for 1954 showed income of $24,864.

Plaintiff further testified that the two children attended the Blackberry Lane School, which was just around the corner from the home; that at the time of the hearing her husband had not sent money for herself and the children for three or four months; that she borrowed money from her parents and paid them back out of the money deposited in the checking account; and that she had used $2,000 and that there were only a few unpaid bills at the time of the hearing. Plaintiff estimated that it would take $835.30 a month for herself and the children (food and lunch money, $183, maintenance and up-keep, including utilities, $236.36, clothes and laundry, $128.66, auto expenses, $63, medical, $75.08, children's special needs, $59.70, and miscellaneous, $89.50). She testified that her estimate was for a lower scale of living than that to which she and the children were accustomed prior to the separa-

tion. She also testified that she had paid her attorneys nothing and made no deposit for costs and expenses.

On cross-examination, plaintiff testified that the balance in her checking account at the State Bank of Wellston was a little better than $200; that she had $1 in the Bank of St. Louis; that she paid out money for dresses and household expenses; that she had a substantial sum of money at home, but that even though she claimed it as hers, defendant also claimed it; that she had not used the money because her attorneys advised her not to use it; and that the money which she previously had in the Bank of St. Louis was from her DuPont stock and her weekly allowance. She further testified that she owned six or eight dozen sheets purchased at a cost of $25 per dozen, a mink coat, a mink stole and a beaver jacket of a total worth of $2,500 to $3,000 and that she had due bills from department stores of the value of $20 to $50.

On May 15, 1958, the trial court entered its order directing the defendant to pay to the plaintiff the sum of $100 per month for the support of each child, making a total of $200 per month for both children, $400 per month temporary alimony, $1,000 attorney's fees on account, and $54 to secure costs. To the ruling of the trial court, defendant filed a motion for a new trial on May 24, 1958.

On the hearing of the motion for a new trial, the court, over the objections of the plaintiff, permitted the defendant to introduce additional evidence. This evidence consisted principally of excerpts from the deposition of plaintiff taken on May 26, 1958, and developed the fact that defendant had, during the time the parties were living together, given the plaintiff the sum of $50 a week as household money (from which sum the plaintiff had been able to put aside some as a savings), and there was some testimony touching the "substantial sum of money" which had previously been mentioned in the testimony. In connection

with that, the plaintiff testified that the money had been kept in a bag at her mother's house and when she opened the bag a few days before the taking of the deposition, it contained $10,000; that she had used about $3,000 of it (but that during that period of time she had actually spent more than $4,000 for living expenses); and at the time of the taking of the deposition there was $7,000 in time certificates in the State Bank of Wellston. She further stated in her deposition that the defendant had, in addition to the weekly allowance for household expenses, paid a maid and that she had charge accounts which were sometimes used to buy clothes. As part of defendant's motion for a new trial, he attached an affidavit from the vice-president of the Mutual Bank & Trust Company which stated that the 100 shares of DuPont stock which had been given to secure the loan made to defendant by the Bank was in the name of Shirley Kaye and that said officer of the Bank was ready, willing and able to deliver said shares of stock to Shirley Kaye "at the present time." The plaintiff in her testimony offered on her motion had stated that the 100 shares of DuPont stock held by the Mutual Bank & Trust Company as security on defendant's loan were listed in her name, but that the Bank had refused to return them to her because of her husband's contention that he owned the stock.

The trial court overruled defendant's motion for a new trial and this appeal was taken.

■ Under the decisions of the courts of our state, a motion or application for alimony pendente lite, including suit money and attorney's fee, as authorized by our statute, Section 452.070 RSMo 1949, V.A. M.S., is a separate and distinct proceeding from the divorce case but is incidental thereto. State ex rel. Gercke v. Seddon, 93 Mo. 520, 6 S.W. 342; Libbe v. Libbe, 166 Mo.App. 240, 148 S.W. 460. The basic considerations in making the allowance are the insufficiency of the wife's means to support herself or to defray the expenses of the

litigation in which she is engaged and the financial ability and responsibility of the husband to do so. Arnold v. Arnold, Mo., 222 S.W. 996; Hopkins v. Hopkins, Mo. App., 260 S.W.2d 833. Such an allowance is largely within the discretion of the trial judge and his discretion will not be interfered with on appeal unless it has been manifestly abused. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455; Gregg v. Gregg, Mo.App., 272 S.W.2d 855; Gross v. Gross, Mo.App., 319 S.W.2d 880.

The defendant (appellant) contends that the trial court erred in that: (1) the evidence clearly showed that plaintiff was possessed of property and a separate estate and had ample funds with which to prosecute her suit and to support herself during the pendency of the litigation and to employ and pay her attorneys; (2) that under the evidence the allowance of $400 per month as alimony pendente lite was grossly excessive, even if the court was justified in making any award; and (3) that under the evidence the award of $1,000 to the plaintiff on account for attorney's fee was grossly excessive, even if an attorney's fee was justified.

In support of his position, defendant cites Rutledge v. Rutledge, 177 Mo.App. 469, 119 S.W. 489, 490; Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455, 456; Arnold v. Arnold, Mo., 222 S.W. 996, 1001–1002; Noll v. Noll, Mo.App., 286 S.W.2d 58, 61; Summers v. Summers, Mo.App., 222 S.W.2d 514, 520; Lambert v. Lambert, 109 Mo.App. 19, 84 S.W. 203, 204; Lehr v. Lehr, Mo.App., 264 S.W.2d 37. These cases are cited in support of the contention that since the adoption of the Married Women's Act, Section 451.250 et seq. RSMo 1949, V.A.M.S., alimony pendente lite is no longer granted as a matter of course, but depends on the necessity of the case.

We do not think that the evidence discloses that plaintiff had sufficient funds and property available to support herself during the pendency of the litigation and to employ and pay her attorneys for their services and to pay the costs of the action.

The evidence heretofore reviewed indicates that defendant possessed considerable property and that he enjoyed a substantial income therefrom and from his earnings. On the other hand, the plaintiff had a very limited and questionable income. The evidence did not indicate that she had any reasonable income upon which she could rely. Her ownership of 100 shares of Du-Pont stock appears questionable and the sale of said stock was made impossible by reason of it being pledged for a debt due the Mutual Bank and Trust Company. This remains true even though the vice-president of that company made an affidavit that the bank was ready, willing and able to deliver said shares to plaintiff "at the present time." There was no evidence that she, in fact, had the stock in her possession and that she was free to sell same. The testimony concerning a "substantial" amount of cash at plaintiff's disposal was not definite and there was no denial that defendant, in fact, claimed ownership of all of that sum of money. The defendant, according to the plaintiff's testimony, protested her use of any of that money. In connection with the amount of the allowance for attorney's fees, the record clearly shows that all the matters in connection with the motions and the cause itself were and will be hotly contested; that conferences were held and depositions taken, and that in the opinion of the only attorney whose statement appears in the record a reasonable fee would be $1,500.

■ We do not think that the trial court erred in making the allowances nor do we think that the allowances were excessive. The appellate courts of this State have been loathe to interfere with the discretion of the trial court in making temporary allowances to the wife pending a divorce action, Boll v. Boll, Mo.App., 287 S.W. 834. The test is whether the wife and children are living and are able to

live at the station in life during the pendency of the divorce action to which they have been accustomed. Batteiger v. Batteiger, Mo.App., 151 S.W.2d 557.

The trial court has the parties before it, and in presiding over the trial, has a much better grasp of all the ramifications of a case than an appellate court can gain by reading a record. Thus the determination of allowances must be left largely to the discretion of the trial court. Wonneman v. Wonneman, Mo.App., 305 S.W.2d 71; Cadenhead v. Cadenhead, Mo.App., 265 S.W.2d 426; Gross v. Gross, Mo.App., 319 S.W.2d 880. It follows that an appellate court will not interfere with the exercise by the trial court of its discretion unless it has been manifestly abused. State ex rel. Gercke v. Seddon, 93 Mo. 520, 6 S.W. 342; Simmons v. Simmons, Mo.App., 280 S.W. 2d 877; Wonneman v. Wonneman, supra; Gross v. Gross, supra. In the case of Rush v. Rush, Mo.App., 284 S.W.2d 53, the Court relied on the cases of Richardson v. Richardson, Mo.App., 270 S.W.2d 68, and Gregg v. Gregg, supra. The Court quoted from the Richardson opinion loc. cit. 72, as follows: "Plaintiff chiefly relied upon the Rutledge case, Rutledge v. Rutledge, 177 Mo.App. 469, 119 S.W. 489, and the Penningroth case, Penningroth v. Penningroth, 71 Mo.App. 438. Those cases have been referred to many times in later decisions, and still the law remains that the allowance of alimony pendente lite to a wife pending a divorce action, while not regarded as absolute, is within the discretion of the trial judge * * *."

After taking into consideration all of the facts and circumstances, and considering particularly the standard of living the parties were accustomed to prior to the separation, we are not willing to hold that the trial court manifestly abused its discretion in making the allowances or in the fixing of the amounts thereof.

The judgment is affirmed.

WOLFE, P. J., and RUDDY, J., concur.