Joseph W. **FOLK**, Plaintiff, Appellant,

v.

Vera Hicks **FOLK**, Defendant, Respondent.

No. 30696.

St. Louis Court of Appeals.

Missouri.

June 13, 1961.

Henry G. Morris, St. Louis, for appellant.

Morris A. Shenker, and Bernard J. Mellman, St. Louis, for respondent.

DEW, Special Commissioner.

This was originally an action solely for divorce, instituted by the appellant. Respondent filed a general denial of the charges made and also a cross-petition for a decree for separate maintenance. Thereafter respondent also filed a motion for alimony pendente lite and for counsel fees pending the action. Upon a hearing of the motion the Court sustained it, allowing the respondent $400 per month temporary alimony and $1,000 attorneys' fees pending the suit. Motion to modify and for a rehearing of that order and judgment having been overruled, the appellant has appealed therefrom.

For convenience the parties will hereinafter be referred to, respectively, as plaintiff and defendant, as they appeared in the trial court. The plaintiff contends that the defendant was shown to possess sufficient means to support herself and to pay her own counsel fees without imposing that burden upon the plaintiff, and that, further, the allowances made were excessive.

The defendant insists that the proof shows she is without any income whatever or other property or means with which to support herself and to pay her counsel fees pending the suit, and that the allowances made were not excessive.

Defendant concedes in her brief that under the law she is not entitled, as a matter of absolute right, to temporary alimony or counsel fees pending the action,

if she is shown to possess adequate means to supply the same. That principle of law is well settled. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455; Stark v. Stark, 115 Mo.App. 436, 91 S.W. 413; Noll v. Noll, Mo.App., 286 S.W.2d 58, 61 and cases therein cited. But defendant strongly asserts that such principle does not apply to her because of her total lack of income or other adequate property.

According to the evidence the plaintiff had previously been married and divorced and had a daughter by the previous marriage. He is a sales agent for several shoe manufacturers and his work requires much travel. He married the defendant in 1954. The separation is alleged as of April 25, 1959. The defendant remained and still resides in the apartment occupied by them prior to the separation. Plaintiff's gross income for the years 1954 to 1959, inclusive, was shown in his report as follows: 1954, $14,540; 1955, $16,924; 1956, $21,816; 1957, $14,408; 1958, $13,249; 1959, $13,169. Very substantial reductions, personal and business, were made on each of the above reports, for many of which plaintiff had no records at the hearing. His gross income of $13,169 for 1959 was reduced by claimed business deductions totaling $6,912. That return was later adjusted after his deposition in this case.

Since plaintiff's separation he has expended about $1,200.00 to set up an apartment for himself, for which he pays $115 per month, including garage. His current personal expenses, not including clothes, drugs, and barber bills, aggregate $308.50 per month, and his monthly business expenses total $269.80, or approximately $3,000 per year. His monthly outlay for his business, living costs, loan payments and budget installments total $971.60. He estimated that since his marriage he had bought $16,000 to $18,000 worth of furniture, to which he had made no objection. He said he had been in debt ever since his marriage to the defendant and that his total indebtness now is about $16,000.

Plaintiff enumerated numerous installment accounts at department stores and other establishments on which he is making monthly payments. One of these was a jewelry account for one of defendant's lost pearls from her engagement ring and a watch for his daughter, for which he paid about $700. He also owes his father for substantial sums borrowed to pay living expenses. He has borrowed $800 from one of his employers. He sends the defendant $30 per month and pays her utility bills. He has paid $1,200 on a default judgment of $1,818.45 rendered against him and defendant for rent and possession of her apartment. He has not been able to pay her current rent for several months because of lack of funds. He listed six or more charge accounts maintained by him at fashionable liquor and dining establishments.

According to the defendant's evidence she is 49 years of age and had not been married prior to her marriage to the plaintiff. Prior to her marriage she was employed as a designer for her mother and brother at large establishments in St. Louis and earned $10,000 per year. Later when her mother sold the business she and her mother purchased some corporate stock valued at about $20,000. Defendant, as stated, occupies her apartment at 4905 Lindell Boulevard, St. Louis, which the parties occupied before their separation. The mother, Mrs. Ethel Hicks, then a single woman 69 years of age, purchased an apartment building at 6803 Kingsbury, St. Louis, in part of which Mrs. Hicks and her own mother (defendant's grandmother) then 90 years of age, reside. The price of that apartment building was $52,500, and the joint stock of defendant and Mrs. Hicks was pledged to the bank as security for a loan of the necessary cash for the down payment on the purchase price. The stock is also held by the bank as security on a loan to the plaintiff. The dividends on this stock are used to pay the interest on the Hicks' loan. A deed of trust for $32,500 was made to a loan company on the

Hicks' building to effect the purchase, on which encumbrance $7,000 has been paid. The deed to the Hicks' apartment building gives Mrs. Hicks a life interest with right of sale, lease or otherwise to dispose of the property, with remainder at her death to the defendant. The total monthly payment of $561.65 by Mrs. Hicks on these loans, together with the maintenance, exceeds the monthly income from the building. It was stated that the stock was placed in the joint names of defendant and Mrs. Hicks because it would descend to defendant anyway. Mrs. Hicks had supplied $7,000 of its purchase price from insurance proceeds received at her son's death. Defendant, it was testified, was required to sign the mortgage papers on the Hicks' apartment because of Mrs. Hicks' age. Defendant testified that she received no rents from the apartment nor any income from the stock.

The defendant is permitted to occupy her same apartment at 4905 Lindell Boulevard, St. Louis, under a new lease made by her mother in her behalf. The landlord would not accept a lease by the defendant or plaintiff. Defendant said she borrowed $500 from her father and sold some of her clothes to pay three months' rent. She outlined her living expenses at a total of $638 per month. Among the items were $205 rent for the eight-room apartment; regular maid, $135; entertainment, $25; drugs, medicines and cosmetics, $25; miscellaneous, $40. She said she could not move into her mother's apartment because her grandmother already shared that apartment. She said the $27,000 valuation shown on her fire insurance policies covering household goods and other personal property was an arbitrary value representing the replacement values and not the original cost. Her furs, she said, valued at $4,800, were 14 years old, and her jewels were gifts.

On the matter of counsel fees defendant's attorney testified that he and his firm had represented defendant in the action for about a year, during which various conferences were held, considerable research made and motions filed and hearings attended. He estimated that approximately 50 hours had been consumed in the matters mentioned, and that the case on its merits will require considerable further service. No counsel fees had yet been paid. The amount suggested in the motion was $1,500.

■ In reviewing the order or judgment of a trial court on a motion for alimony pendente lite or for attorneys' fees pending the action, in a suit for divorce or for separate maintenance, or where both are involved as here, it is the duty of the appellate court to consider the particular facts of the motion at hand; to realize the discretionary nature of the proceeding and to determine the findings for itself and the award, if any. It is further the duty of the reviewing court to weigh the needs of the wife under the facts shown, and to consider the property and means of both parties relative to the financial ability of each to supply the temporary relief sought by the motion. In so doing the Court should have regard for the current incomes of the respective parties, and the sources, property interests, and credit status of each from which the wife's necessities may be provided. Should the Court find that the wife is entitled to an order for temporary alimony or attorneys' fees on account, then, needless to say, such allowances should not be excessive under the facts. McCarthy v. McCarthy, Mo.App., 329 S.W.2d 236.

■ The prevailing rule of appellate courts in reviewing orders of temporary alimony or attorneys' fees pending the suit, was stated by this court in Kaye v. Kaye, Mo.App., 327 S.W.2d 496, loc. cit. 500:

"Such an allowance is largely within the discretion of the trial judge and his discretion will not be interfered with on appeal unless it has been manifestly abused."

In McCarthy v. McCarthy, supra, a case quite different in facts but involving some

of the same principles as the case at bar, this Court said, 329 S.W.2d at page 241:

"We cannot agree with the appellant that his income should be given primary consideration by the trial court when making an award for alimony pendente lite. We believe that the correct rule is that the husband's financial position, income and property should be considered as a whole when determining his ability to pay such award. In no event should the consideration given to the husband's income be allowed to outweigh the needs of his wife and family, but each should be equally weighed in arriving at the proper award."

In the McCarthy case, where the family standard of living had been maintained at an extremely high level, including European trips and extravagant indulgences, the husband contended that the allowance for temporary alimony would require him to reduce his own standard of living, to his embarrassment with his employers, or would compel him to encroach upon his capital consisting of large stock holdings. It was there held that the husband had participated in establishing the high standard of living for the wife and family and that his total financial position must be considered in determining his ability to pay.

In the case at bar there is no evidence of any capital belonging to the plaintiff, nor means other than his income, household goods and employment. The fact alone that he had participated in establishing the standard of living to which the defendant was accustomed, would not, under the evidence here, affect his present ability to pay the allowances.

█ The record in the instant proceeding discloses an abortive attempt before and since the separation to maintain a standard of living manifestly improvident and unrealistic when considered with the plaintiff's financial ability to provide it. Despite the fact that plaintiff was and is heavily in debt to merchants and landlord, and for substantial sums of money borrowed from his relatives, employer, and banks, on which his monthly payments exceed his net monthly income; and notwithstanding the fact that plaintiff's business expenses are currently estimated at $3,000 per year, the parties continued to reside and defendant still resides in an apartment of eight rooms, and defendant still maintains permanent maid service at $135 per month and indulges in other extravagances. Plaintiff, under the conditions known to him, has fitted up a separate apartment at a cost of $1,200. Defendant, with her own stock interests and all dividends therefrom being pledged to the bank as security for their indebtedness, and her conditional interest in her mother's apartment building being contingent upon her mother's death, she is, nevertheless, seeking temporary alimony to maintain her previous standard of living, the expense of which she estimated at a total of $638 per month.

Considering the nature and extent of the legal services rendered and as described, and keeping in mind the ability of the plaintiff to pay for same and the temporary character of the order made, the sums allowed are, in the opinion of the Commissioner, excessive.

For the reasons stated, it is the conclusion of the Commissioner that the allowance of temporary alimony in the sum of $400 per month is excessive by at least $100 per month, and that the allowance of counsel fees pending the action is excessive by $250. The Commissioner, therefore, recommends that the judgment appealed from be modified so that, as amended, it will provide that defendant have and recover of plaintiff, as and for alimony pendente lite, the sum of $300 per month and suit money in the sum of $750.

As so modified the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DEW, Special Commissioner, is adopted as the opinion of the court.

Accordingly the judgment appealed from is therefore modified so as to provide that defendant have and recover of plaintiff as and for alimony pendente lite the sum of $300 per month, instead of $400 per month as in said judgment provided, and further modified so as to provide for suit money in the sum of $750, instead of $1,000 as therein provided, and as so modified said judgment is affirmed.

ANDERSON, P. J., RUDDY, J. and GEORGE P. ADAMS, Special Judge, concur.

WOLFE, J., not participating.