Robert L. SCHNEIDER, Public Administrator of the Estate of Lucille Friend, Deceased, (Plaintiff) Respondent,

v.

William D. FRIEND, (Defendant) Appellant.

No. 30827.

St. Louis Court of Appeals.

Missouri.

Oct. 16, 1962.

Henry G. Morris, St. Louis, for appellant.

James E. Crowe, St. Louis, for respondent.

RUDDY, Judge.

This is an appeal by the husband, defendant in a divorce action, from an order of the Circuit Court of the City of St. Louis sustaining the wife's motion for alimony pendente lite and attorney's fees.

The petition for divorce was filed on the third day of June, 1959, and, among other things, alleged that plaintiff and defendant lived together as wife and husband until on or about May 20, 1959. Plaintiff also alleged that defendant "although gainfully employed and otherwise able to do so, failed to properly support and maintain plaintiff and to properly provide food and clothing and other necessities of life for her." Contained in plaintiff's petition was the allegation that she and the defendant were residents of the City of St. Louis, State of Missouri, and that she had resided in said city and state for one whole year and more next before the filing of the petition.

The record shows that the petition was subscribed and sworn to before a Notary Public in the City of East Chicago, State of Indiana, on the 28th day of May, 1959. Defendant's answer to plaintiff's petition admitted the marriage and the birth of one child; alleged that he was without sufficient knowledge at the time of filing the answer "as to the residence of the plaintiff to answer her allegation of residence," and denied all other allegations in plaintiff's petition.

On the 29th day of June, 1960, plaintiff filed her motion for alimony pendente lite, attorney's fees and court costs. The motion was heard by the trial court on September 16, 1960, and on the same day the court entered its order granting $40.00 per week as and for alimony pendente lite and the sum of $150.00 as and for attorney's fees. The defendant appeals from the judgment and order of allowance for alimony pendente lite and attorney's fees. While the appeal was pending in this court plaintiff died and her administrator has been substituted as plaintiff.

Defendant relies on two points for reversal of the order and judgment. (1) (a) The plaintiff is not a resident of the City of St. Louis and State of Missouri and in fact is a resident of the State of Arizona. (b) The court is without jurisdiction of the person of respondent or of the res. (c) Venue of the cause does not obtain in the City of St. Louis, State of Missouri, where the divorce action was filed. (2) There was a complete failure of proof as to any income, financial means or financial worth by which defendant could pay plaintiff any amount.

The points relied on by defendant involve two separate theories as a basis for reversal of the judgment. Obviously, if defendant is correct in his first point, we need not consider the second point. Therefore, we shall consider the merits of defendant's contention that the trial court was without

jurisdiction of plaintiff's divorce action because she was not a resident of the City of St. Louis, State of Missouri. In support of this contention defendant states that the evidence shows that plaintiff was not residing in the State of Missouri when she signed the petition for divorce in East Chicago, Indiana. Defendant contends that plaintiff left Missouri on May 20, 1959, and did not intend to return to live or make her home at any time in the future in this state. Put another way, defendant contends that plaintiff had not resided within the State of Missouri one whole year next before the filing of her petition. The solution to this contention depends entirely upon a question of fact and must be found in the evidence.

In plaintiff's testimony, given in support of her application for pendente lite allowances, she testified that she lived at 3939 Prather Avenue in the City of St. Louis, Missouri, at the time her testimony was given. Some confusion exists in her cross-examination as to her intention to establish a new residence, but essentially her testimony shows that she left the home on Prather Avenue on the morning of May 20, 1959. By pre-arrangement she met her brother and both she and her brother traveled to his home near Chicago, Illinois. While staying with her brother she signed her petition for divorce before a Notary Public in the City of East Chicago, Indiana, and forwarded the petition to her attorney in St. Louis who filed same on June 3, 1959. From her brother's place near Chicago, Illinois, she went to her daughter's home in Houston, Texas, where she remained for approximately three months. She then went to her sister's home at Chandler, Arizona, where plaintiff was staying at the time of the hearing on her motion for pendente lite allowances. The record is replete with testimony indicating that plaintiff was very ill, both physically and mentally when she left St. Louis and had been in hospitals and under the care of doctors while in Arizona. When asked why she left the home at 3939 Prather, she stated

that her husband would not pay any of her bills and would not take her to a doctor. She further testified that her husband failed to provide her with food and clothing and that her sister has provided food and clothing and the medical aid she has needed since the beginning of her stay in Arizona. She has received no money or other help from her husband.

Plaintiff had been staying with her sister in Chandler, Arizona, since the 18th day of October, 1959. In the cross-examination of plaintiff she testified that it was her intention to make Chandler, Arizona, her residence. However, on re-direct examination she was asked the following questions and gave the answers that follow:

"Q. Have you made any—done anything to establish your residence in Arizona by voting or paying taxes or anything of that nature? A. I have not.

\*    \*    \*    \*    \*    \*

"Q. Have you in your mind, by your intention changed your residence from St. Louis to Chandler, Arizona? \* \* \* A. I have not."

The law pertinent to the issue under review is found in Section 452.050 RSMo 1959, 24 V.A.M.S., the applicable part of which reads as follows:

"No person shall be entitled to a divorce from the bonds of matrimony who has not resided within the state one whole year next *before filing of the petition,* unless the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state; \* \* \*." (Emphasis ours.)

Also involved in a consideration of defendant's point is Section 452.040 RSMo 1959, 24 V.A.M.S., which provides the venue of the divorce proceedings and reads as follows:

"The circuit court shall have jurisdiction in all cases of divorce and ali-

mony or maintenance; * * *. The proceedings shall be had in the county where the plaintiff resides, and the process may be directed, in the first instance, into any other county in the state where the defendant resides."

It has been held that this section merely provides the venue of the divorce proceeding. Nolker v. Nolker, Mo., 257 S.W. 798; Tate v. Tate, 227 Mo.App. 1141, 59 S.W.2d 790.

On the issue of jurisdiction of the subject matter defendant is correct when he states that the trial court only has jurisdiction where plaintiff has resided in the state one whole year next before filing her petition, except under circumstances not before us. Plaintiff does not dispute this statement. It will be observed that the statute, Section 452.050 only requires plaintiff to have resided within the state one whole year next before the filing of the petition. Defendant in his brief seems to contend that this section of the statute requires plaintiff to retain her residence in Missouri during the entire time the divorce suit is pending.

■ We do not concede that plaintiff has established a residence other than the one she had at 3939 Prather Avenue, St. Louis, Missouri. Assuming, without ruling, that she did establish a residence outside the State of Missouri, after she filed her petition, the trial court would not lose jurisdiction to determine the divorce proceedings or any proceedings incident thereto if plaintiff had the required residence called for under Section 452.050 at the time she filed her petition for divorce. The applicable rule in this connection is set out in 17 Am.Jur., Divorce and Separation, § 291, p. 465, as follows:

"If the plaintiff in a divorce suit satisfies the residential requirements at the time of commencing proceedings, the court's jurisdiction will survive a subsequent change of domicil in the absence of an express statutory provision to the contrary. At least, this is

true to the extent of jurisdiction for an adjudication on the allegations of the plaintiff's pleading as it stood at the time of his removal. This result may rest on either of two grounds: (1) The statutes prescribing qualifications of residence nearly always contain the phrase 'at the time of commencing suit' or equivalent language; and (2) the situation is one to which the familiar equitable principle, that once a court has obtained jurisdiction of a cause, it will not be surrendered until the equities of all parties have been dealt with, applies."

■ The crucial question to be answered in connection with defendant's first point is whether or not plaintiff resided in St. Louis, Missouri, one whole year next before June 3, 1959, which is the date on which she filed her petition for divorce. There is no dispute about plaintiff's residence in St. Louis, Missouri, for many years prior to May 20, 1959. It is defendant's position that plaintiff did not reside in the State of Missouri when she signed the petition for divorce in East Chicago, Indiana, and had it filed in the Circuit Court of the City of St. Louis on June 3, 1959. If plaintiff in a legal sense retained her residence in St. Louis, Missouri, between May 20, 1959, and June 3, 1959, it would be sufficient to permit her to file her petition for divorce in this state. We hasten to state that there is no evidence that plaintiff, prior to filing her petition for divorce, had or maintained a residence any place other than in St. Louis, Missouri. In order for plaintiff to lose her residence in St. Louis, Missouri, she would have to create a residence elsewhere. To create a "domicile" or "residence" two elements are fundamentally and absolutely necessary or essential. These are actual bodily presence in the place combined with the freely exercised intention of remaining there permanently, or for an indefinite time at least. Whenever these two elements combine a domicile of choice is created, and all former domiciles are ipso

facto abandoned. State ex rel. Taubman v. Davis, 199 Mo.App. 439, 203 S.W. 654, 1. c. 656.

In the aforesaid case, the court quoted from Story on Conflict of Laws, 50, as follows: " 'Neither presence alone nor intention alone will suffice to create a domicile of choice. Both must concur, and at the very moment they do concur the domicile is created.' " (203 S.W. 1. c. 657.)

These authorities clearly show that two elements are necessary to create a residence of choice. The person must be present in the new residence of his choice and he must have exercised an intention of remaining there permanently, or for an indefinite time at least. If these elements are not present, a residence is not created or acquired and, therefore, the old residence of the party continues as his or her residence. While the evidence shows that plaintiff was bodily present in East Chicago, Indiana, when she signed the petition and when it was filed, there is not a scintilla of evidence to show that she had formed the intention of remaining there permanently or for an indefinite time at least.

In the case of Nolker v. Nolker, supra, the Supreme Court had before it a contention that plaintiff was a resident of the City of St. Louis and not of St. Louis County and, therefore, St. Louis County did not have venue of the action filed by plaintiff. In that case the court held that actual residence and the intention of remaining either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode are sufficient to constitute a change of domicile. As we have said before, there is a failure in the evidence to show that plaintiff had a fixed intention to remain either permanently or for an indefinite period of time at any place between May 20, 1959, and June 3, 1959; nor is there any showing that she had a fixed or certain purpose not to return to her former place of residence at 3939 Prather Avenue, St. Louis, Missouri.

Defendant relies on the case of Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838. However, in that case the court held, as did the courts in the other cases we have cited, that actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode, will constitute a change of residence. It was held in the Phelps case, as has been held in all Missouri cases, the fact of physical presence and the intention must concur. It must be a freely exercised intention to remain at the new place of residence either permanently or at least for an indefinite time. As we have said, there is nothing in the evidence to show that plaintiff before June 3, 1959, ever intended to create a new residence and abandon her old residence at 3939 Prather Avenue, St. Louis, Missouri.

■ A residence once acquired is not lost until a new one is created. The facts of the instant case come closely within the facts hypothesized in the statement appearing in 17 Am.Jur., Divorce and Separation, § 294, p. 468, wherein it is said:

"It frequently happens that when a wife leaves her husband because of his misconduct he remains within the state of matrimonial domicil while she leaves the state temporarily to live with her family or friends, either intending to return to the state at a later date or having no fixed idea of what she will do. In such a case the wife is deemed to have her residence of domicil in the state in which the parties cohabited as husband and wife, and the courts apply the general rule that a temporary absence from the jurisdiction without an attempt to establish a domicil elsewhere does not cause one to lose a domicil or residence within the jurisdiction, with the result that she may sue her husband for a divorce in the jurisdiction in which they last had a matrimonial domicil. Thus, the statutory requirement of a residence for

one year is satisfied if the wife has a legal domicil within the state of matrimonial domicil for that period of time, although she has been absent for a part or all of the statutory residence period."

It is the rule of law that a residence once established within this state and not thereafter changed is sufficient for the maintenance of a divorce action, notwithstanding the physical absence of the resident for a short or long period from the State of Missouri. Phelps v. Phelps, supra; Trigg v. Trigg, 226 Mo.App. 284, 41 S.W.2d 583.

Under the evidence in this case the jurisdictional requirements as provided in Sections 452.050 and 452.040, RSMo. 1959, 24 V.A.M.S., existed when plaintiff filed her petition in the Circuit Court of the City of St. Louis. Jurisdiction over the person of plaintiff and the subject matter of the petition then attached and the court was not divested of its jurisdiction even though plaintiff thereafter and before trial left the state.

As we have shown, if the necessary residential requirement exists at the time of filing the petition for divorce, the court's jurisdiction will survive a subsequent change of residence. However, we are not convinced that any subsequent change of residence took place after the filing of the petition for divorce. As we have pointed out, it is defendant's contention the evidence shows that plaintiff intends to make Arizona her permanent residence. We do not think that plaintiff's testimony is capable of such a conclusion. It is true that in her cross-examination she stated that she intended to make Chandler, Arizona, her residence. However, this is not to be construed to mean that she had already formed the intention to make Chandler, Arizona, her residence. We think it was plaintiff's intention to state that at some time in the future she intended to make Chandler, Arizona, her residence. This becomes certain when we give meaning to her other testimony wherein she said she had done nothing to establish her residence

in Arizona and that she had not as yet formed any intention to change her residence from St. Louis to Chandler, Arizona. In view of what we have said, the trial court had jurisdiction over the petition for divorce filed by the plaintiff and defendant's contention to the contrary is overruled.

The second point relied on by defendant must be sustained. He contends there was a complete failure of proof as to any income, financial means or financial worth by which he could pay plaintiff ■■ amount.

[6] Prior to the Married Women's Act, Section 451.250 et seq., RSMo. 1959, 24 V.A.M.S., alimony pendente lite was allowed as a matter of course and, as some cases held, was regarded as absolute. Since the adoption of the Married Women's Act alimony pendente lite is no longer granted as a matter of course but depends on the necessity of the case. Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455; Kaye v. Kaye, Mo.App., 327 S.W.2d 496; Noll v. Noll, Mo.App., 286 S.W.2d 58; Summers v. Summers, Mo.App., 222 S.W.2d ■■

[7, 8] The burden is on the wife who makes the application for pendente lite allowances to show, at least prima facie, the facts which entitle her to the allowances. We have held before, the controlling considerations are the needs of the wife as shown by the circumstances, and the financial ability of the husband to pay. McCarthy v. McCarthy, Mo.App., 329 S.W.2d 236.

The wife has the burden of showing that she has insufficient means to support herself and to defray the expenses of the litigation in which she is engaged and must show the financial ability and responsibility of the husband to pay for such support and expenses of the litigation. There are many authorities in this state holding the above to be true, some of which we cite. Padgett v. Padgett, Mo.App., 231 S.W.2d 207; Kaye v. Kaye, supra; Noll v. Noll, ■■

[9] It will be noted from what we have said and in the cases cited that one of the

burdens the wife has is to show the ability of the husband to make the payments. It is necessary that she produce some proof of his ability to pay the allowance and the proof may take the form of showing what property he possesses, what income he has or perhaps what ability he has to earn money. That the financial ability of the husband to pay is a primary consideration of the court and requires proof by the wife is beyond dispute and it has been held in numerous cases as necessary that some evidence of the husband's ability to pay the allowances be produced by the wife. McCarthy v. McCarthy, supra; Kaye v. Kaye, supra; Papenberg v. Papenberg, Mo.App., 289 S.W.2d 468; Noll v. Noll, supra; Padgett v. Padgett, supra; Bovard v. Bovard, 233 Mo.App. 1019, 128 S.W.2d 274; Howey v. Howey, Mo.App., 276 S.W. 84.

We said in the Papenberg case (289 S.W. 2d 1. c. 470 and 471):

"These changed conditions would justify an increase in the allowance for her support and maintenance had plaintiff produced evidence of defendant's ability to pay such increase. In the absence of such evidence we cannot say that the trial court abused its discretion in refusing to increase the amount of the award for the child's support and maintenance.

\* \* \* \* \* \*

"The allowance of attorney's fees and suit money is within the sound discretion of the court. However, before a court should be called upon to exercise that discretion there should be introduced some evidence of the husband's ability to pay such an allowance."

■ An analysis of the record before us shows that plaintiff failed to produce evidence of the defendant's ability to pay the allowances made by the court. We think the record is sufficient to show that the plaintiff had insufficient funds to support herself and to defray the expenses of the litigation but she produced no evidence

demonstrating the financial ability and responsibility of the husband to pay the allowances. We shall refrain from stating the evidence showing that she had insufficient means to support herself and to defray the expenses of the litigation and will confine our summary to those parts of the record which bear upon the financial ability of the husband to pay the allowances.

Plaintiff testified that the *former* occupation of her husband was chief mechanic inspector for the Missouri Pacific Railroad and that she and her husband owned the home at 3939 Prather which she said was held in joint names as tenants by the entirety. She was then asked: "Do you know whether your husband has any other assets?" and she answered, "No, I do not." She further testified that her husband never discussed his financial affairs with her. The first five or ten years of their marriage she knew something about his assets but after that she knew nothing. The record shows they were married approximately 39 years at the time she filed her petition for divorce. No other evidence or testimony appears in the record touching the husband's assets, whether or not he was employed or whether he had the ability to earn money.

■ Defendant's interest in the home at 3939 Prather Avenue cannot be considered because neither party acting independently of the other could sell the property or encumber it. We do not think that his ownership in this property as a tenant by the entirety makes it available to him for payment of the allowances. Hopkins v. Hopkins, Mo.App., 260 S.W.2d 833; Burtrum v. Burtrum, Mo.App., 200 S.W.2d 80.

The record shows that plaintiff was treated rather shamefully by her husband in the matter of providing for her support and medical care and we reluctantly reverse the orders in her favor but, as we have pointed out, the cases today are unanimous in holding that it is the burden of the wife to produce evidence of the husband's ability to pay the allowances. This she has failed to

do and for this reason the order and judgment of the trial court must be reversed. It is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.