**Scott Anthony CAMBIANO, Appellant,**

v.

**Sandra K. DAVIS, individually and as next friend of Ashley Cambiano, Respondents.**

**No. WD 47681.**

Missouri Court of Appeals, Western District.

June 28, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1994.

Steven D. Wolcott, Liberty, for appellant.

Deborah A. Tooley, Kansas City, for respondents.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

BRECKENRIDGE, Judge.

Scott Anthony Cambiano appeals from the judgment of the trial court denying his petition in equity to set aside an order of paternity, child custody, support, and visitation. Mr. Cambiano raises one point on appeal, alleging that the trial court erred in denying his petition because the trial court's finding that he had been properly served with process was "against the weight of the evidence and erroneously applied the law to the evi-

dence." The judgment of the trial court is affirmed.

In April of 1991, Sandra K. Davis, individually and as next friend of Ashley K. Cambiano, filed a paternity action in Clay County, Missouri, against Mr. Cambiano. A summons was first issued to Jackson County, Missouri, for service on Mr. Cambiano at an address in that county where he and Ms. Davis had previously lived. After that summons was returned non est, an alias summons was issued by the Clay County Circuit Court for service on Mr. Cambiano at 17511 Old BB Highway in Holt, Missouri. The alias summons was returned non est.

Ms. Davis filed a request in June of 1991 for the appointment of a special process server, which the trial court granted. A second alias summons was issued, and on September 18, 1991, a properly verified return of service [1] was filed with the Clay County Circuit Court. The special process server indicated in the return that personal service on Mr. Cambiano was obtained in the following manner:

> By leaving, on the 17th day of July, 1991, for the following named defendant(s) Scott A. Cambiano a copy of the summons and a copy of the petition at the respective dwelling place or usual place of abode of said defendant(s) at 17511 Old BB Hwy, Holt, Mo. 64048 with Ronald Bumgarner, a person of his or her family over the age of 15 years; ....

After a hearing, the trial court entered an order of paternity, child custody, support, and visitation on September 18, 1991. In the order, the trial court indicated that "Scott Anthony Cambiano, having been personally served and duly notified, appeared not."

Mr. Cambiano filed his petition in equity to set aside the order of paternity, child custody, support, and visitation on November 17, 1992. At the hearing held on the petition, Mr. Cambiano maintained that he had not been served with process. Mr. Cambiano's first witness was his stepfather, Ronald L. Bumgarner. Mr. Bumgarner testified that

---

1. An earlier return of service filed July 19, 1991, indicating that Mr. Cambiano had been personally served on July 17, 1991, was defective in that the special process server failed to properly verify the return.

he lived at 17511 Old BB Road in Holt, Missouri, and that he had received legal papers for Mr. Cambiano at that address in July of 1991. Mr. Bumgarner gave conflicting testimony as to when Mr. Cambiano had last lived with him and his wife, Mr. Cambiano's mother, at the address in Holt, Missouri. Mr. Bumgarner first stated that in July of 1991 "[i]t had probably been a couple of months anyway since he'd lived there." Later Mr. Bumgarner stated that the last time Mr. Cambiano had actually lived in the house in Holt "on a regular basis" was in July of 1989. Mr. Bumgarner acknowledged that he and his wife still continued to receive mail for Mr. Cambiano at their house in Holt. He also stated that he did not tell the special process servers that 17511 Old BB Highway in Holt, Missouri, was not Mr. Cambiano's address. At sometime after service, Mr. Bumgarner testified that his wife gave Mr. Cambiano the legal papers.

Janice Bumgarner testified that the last time that Mr. Cambiano had lived at her residence in Holt was in June or July of 1990. She admitted during cross-examination, though, that Mr. Cambiano used her residence in Holt as his permanent address, that he had mail sent to her home, and that he listed her address as his own on his Missouri driver's license and his draft registration.

Mr. Cambiano stated during the hearing on his petition that he left Missouri in May of 1991 and moved to Fort Lauderdale, Florida, where he was still residing at the time of the hearing. According to Mr. Cambiano, he was first notified of the paternity order in July of 1992, when he returned to the State of Missouri and was arrested for criminal nonsupport. Mr. Cambiano testified that his last residence address in Missouri was 423 Denver, Kansas City, Missouri, and that he lived at that address until he moved to Florida. Mr. Cambiano admitted that in July of 1991 he utilized his mother's address in Holt as his permanent address on his driver's license, that he had mail sent to his mother's house, and that his mother's address was listed as his permanent address on his draft registration.

Ms. Davis testified at the hearing that she and Mr. Cambiano resided together at 423 Denver, Kansas City, Missouri, until mid-January of 1991 and that she attempted service on Mr. Cambiano at that address in April of 1991 and was unsuccessful. Although she had no personal knowledge that Mr. Cambiano was living with his mother and stepfather in July of 1991, Ms. Davis stated that she overheard a telephone conversation between Mr. Cambiano and her daughter, Ashley, on May 9, 1991, during which Mr. Cambiano told Ashley he was at "Mee-Maw's" (Ms. Bumgarner's) house. From the May 9, 1991, telephone conversation as well as from hearsay from friends, Ms. Davis believed that Mr. Cambiano was living with Mr. and Ms. Bumgarner in July of 1991.

Two witnesses testified on behalf of Ms. Davis. Special process server Joseph Martin Isom testified that on July 17, 1991, he delivered a summons and a petition for paternity upon Mr. Cambiano at 17511 Old BB Highway in Holt, Missouri. Mr. Isom stated that Ms. Bumgarner answered the door and told him that Mr. Cambiano was not there. When Mr. Bumgarner came to the door, Mr. Isom told them both that he had papers for Mr. Cambiano and asked them if they would give the papers to him. According to Mr. Isom, the Bumgarners told him they would give the papers to Mr. Cambiano. Mr. Isom then handed the papers to Mr. Bumgarner. Mr. Isom stated that neither Mr. Bumgarner nor Ms. Bumgarner informed him that Mr. Cambiano did not live there or that he was in Florida or that Mr. Isom had the wrong address.

The second witness called by Ms. Davis was Ralph Wayne Johnson. Mr. Johnson testified that he accompanied Mr. Isom to 17511 Old BB Highway in Holt, Missouri, on July 17, 1991. He stated that he heard Mr. Isom ask if Mr. Cambiano was there and Mr. Bumgarner reply, "No, he's not here right now." Mr. Johnson stated that neither of the Bumgarners said that Mr. Cambiano did not live there or was living in Florida or that Mr. Isom had the wrong address. He, too, heard Mr. Bumgarner tell Mr. Isom that he would give the papers to Mr. Cambiano.

At the conclusion of the hearing, the trial court announced that it had found that Mr. Cambiano was properly served and that the order previously entered by the trial court was justified and proper. The trial court, therefore, denied the relief requested in Mr. Cambiano's petition. Mr. Cambiano now appeals the decision of the trial court.

■ Mr. Cambiano acknowledges that review of this court-tried, civil case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The decision of the trial court must be affirmed unless there is no substantial evidence to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Id.* at 32.

■ Mr. Cambiano contends as his sole point on appeal that the trial court erred in denying his petition because the court's finding that he had been properly served with process was "against the weight of the evidence and erroneously applied the law to the evidence." Supreme Court Rule 54.13(a)(1)[2] addresses personal service of process within the state and provides that such service can be made upon an individual as follows:

(1) *On Individual.* Upon an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition to him personally or by leaving a copy of the summons and petition at his *dwelling house or usual place of abode* with some person of his family over the age of 15 years, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process.

(Emphasis added). Mr. Cambiano maintains that his parents' Holt, Missouri, home was not his "dwelling house or usual place of abode" when Ms. Davis attempted service there in July of 1991, such that the service was invalid. He argues that because he was not properly served, the trial court in the original paternity action lacked jurisdiction over him, rendering the judgment of that trial court void.

Neither Rule 54.13 nor its statutory counterpart, § 506.150, RSMo Cum.Supp.1993,[3] define the phrase "dwelling house or usual place of abode." The Missouri Supreme Court has, however, defined the phrase in the context of service of writs as "one's residence or lodging," *State v. Bowdry*, 346 Mo. 1090, 1097–98, 145 S.W.2d 127, 131 (Mo. 1940), and noted in the context of § 506.150 that "a person's usual place of abode is his residence." *Poling v. Moitra*, 717 S.W.2d 520, 522 (Mo. banc 1986). The Supreme Court in both opinions suggested that one's "usual place of abode" is not temporary in nature and requires more than mere physical presence. In *Bowdry*, the Court further defined "one's residence or lodging" for purposes of service of process as "the place where the family of any person shall *permanently* reside in this state, and the place where any person having no family shall *generally* lodge...." *Bowdry*, 346 Mo. at 1098, 145 S.W.2d at 131 (emphasis added). The Court implied that the use of the modifier "usual" in connection with "place of abode" connotes a degree of permanency. *See id.*

In *Poling*, the Court discussed the case of *Garth v. Robards*, 20 Mo. 523 (1855). *Poling*, 717 S.W.2d at 522. *Garth* involved the applicability of a tolling statute when service of process was possible under a predecessor to § 501.150. The plaintiff in *Garth* alleged that the defendant, a man from Hannibal, Missouri, who had left Missouri and stayed in California for one and one-half years, could not have been served with process during his absence from Missouri because while he was in California his "usual place of abode" was not in Missouri. Before leaving Missouri, though, the defendant in *Garth* had expressed an intention to return to Hannibal, where he had property and a house where his wife and children continued to live during his absence. As was noted in *Poling*, "[b]ecause the defendant maintained a residence

---

**2.** Rule 54.13 was amended effective January 1, 1994; however, the changes do not materially affect this subsection. Subsection (a)(1) is subsection (b)(1) in the amended version of the rule.

**3.** All statutory citations are to Revised Missouri Statutes Cumulative Supplement 1993, unless otherwise indicated.

in Missouri where he could have been served by ordinary process," i.e., "a usual place of abode," the tolling statute was found not to apply. *Poling,* 717 S.W.2d at 522. The mere physical presence of the defendant in California did not result in a change of his "usual place of abode" where the defendant expressed an intention to return to Missouri. *See id. Cf. Genrich v. Williams,* 869 S.W.2d 209, 210–12 (Mo.App.1993) (where the court of appeals, while acknowledging several different definitions of residence and the distinction sometimes made between residence and domicile, found that the respondent was a "resident" of Missouri for purposes of the tolling statute during a period of time when the respondent was physically present in Missouri and obtained a Missouri driver's license, worked in hospitals in this state, and designated a Missouri address as his residence on various documents including a marriage license.)

The definitions of "residence" provided in *Bowdry* and *Poling* to clarify "usual place of abode" in connection with service of process are similar to the definitions of "residence" provided by Missouri courts in other contexts. This court stated in a case involving the interpretation of a liability insurance policy that "[r]esidence depends upon a person's physical location coupled with his intent to remain there for an indefinite period of time." *Am. Family Mut. v. Auto. Club Inter–Ins.,* 757 S.W.2d 304, 306 (Mo.App.1988). A comparable definition has been used in the context of a dissolution action. *Schneider v. Friend,* 361 S.W.2d 308, 311 (Mo.App.1962) ("To create a 'domicile' or 'residence' two elements are fundamentally and absolutely necessary or essential. These are actual bodily presence in the place combined with the freely exercised intention of remaining there permanently, or for an indefinite time at least.").

As has been noted in other contexts, once a residence is acquired, it is not lost until a new one is created. *Id.* at 312. In order to create a new residence, a person must "be present in the new residence of his choice and he must have exercised an intention of remaining there permanently, or for an indefinite time at least." *Id.* If both ele-

ments, presence and intention, are not present, a new residence is not created and the party's old residence continues to be his or her residence. *Id.*

■ Residence is a question of fact. *Am. Family Mut.,* 757 S.W.2d at 306. In a bench-tried case, the trial judge is the finder of fact. *First Nat. Bank of Sikeston v. Goodnight,* 721 S.W.2d 122, 123 (Mo.App. 1987). The trial court was free to believe all, part, or none of the testimony of any witness. *Fowler v. Fowler,* 732 S.W.2d 235, 237 (Mo. App.1987).

■ In the instant case, there was evidence from which the trial court could have believed that Mr. Cambiano resided at 17511 Old BB Highway in Holt, Missouri, around May of 1991. Although he later stated that Mr. Cambiano had not "actually live[d]" at the address in Holt since July of 1989, Mr. Bumgarner initially testified that in July of 1991, "[i]t had probably been a couple months anyway since [Mr. Cambiano had] lived there." In response to the question "Do you specifically remember [Mr. Cambiano] living there in the spring of '91?" asked during cross-examination, Mr. Bumgarner responded, "It could have been. That's—it could have been that."

There was also evidence that Mr. Cambiano was not living at his mother's house in Holt in July of 1991. Both Mr. and Ms. Bumgarner testified that, although they did not inform Mr. Isom and Mr. Johnson, Mr. Cambiano was not living at their house at the time process was served. Mr. Cambiano testified that he left Missouri on May 10, 1991, and moved to Fort Lauderdale, Florida.

However, even if Mr. Cambiano was not physically present at 17511 Old BB Highway in Holt, Missouri, when process was served there on July 17, 1991, there is evidence that Mr. Cambiano did not intend as of that date to remain at his new location permanently or at least for an indefinite period of time. The trial court could have believed from the evidence presented that Mr. Cambiano intended in July of 1991 that the Holt, Missouri, address remain his residence and "usual place of abode" at that time.

Intent in connection with residency is to be determined from the acts and utterances of the person. *Goeman v. Goeman,* 833 S.W.2d 476, 478 (Mo.App.1992). The record is devoid of any affirmative statement of intention by Mr. Cambiano with respect to his residency as of July 19, 1991. However, Mr. Cambiano's actions indicate an intention to keep the Holt, Missouri, address his "usual place of abode" in July of 1991. Among the factors to be considered in determining whether a place is a person's "usual place of abode" are the use of an address on official forms such as drivers' licenses and the failure to provide the post office with a forwarding address. 62B Am.Jur.2d *Process* § 209 (1990). Mr. Bumgarner acknowledged during the trial that Mr. Cambiano had used the Holt address as a mailing address and that he and his wife still continued to receive mail for Mr. Cambiano at their house. Ms. Bumgarner testified that Mr. Cambiano used her residence in Holt as his permanent address, that he had mail sent to her home, and that he listed her address as his own on his Missouri driver's license and his draft registration. Mr. Cambiano admitted that in July of 1991 he utilized his mother's address in Holt as his permanent address on his driver's license, that he had mail sent to his mother's house, and that his mother's address was listed as his permanent address on his draft registration.

The evidence supported a finding that Mr. Cambiano's usual place of abode at the time of service of process in this case was 17511 Old BB Highway in Holt, Missouri. Therefore, the trial court's finding that Mr. Cambiano had been properly served with process by service at that address was not against the weight of the evidence and constituted a correct application of the law to the facts.

The judgment of the trial court is affirmed.

All concur.